LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.*
A. P. RAY

and

LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.*
JAMES L. RAY, by next friend.

(*Nashville.*   December Term, 1910.)

1. **CIRCUIT COURT PRACTICE.   Judgment is entered on the
   verdict when it is recorded.**

   The judgment on the verdict in the circuit court is entered by
   the clerk as a matter of course when he records the verdict.
   (*Post, pp.* 26, 29.)

   Code cited and construed:   Sec. 5892, subsec. 3 (S.); sec. 4854,
   subsec. 3 (M. & V.); sec. 4077, subsec. 3 (T. & S. and 1858).

   Acts cited and construed:   Acts 1805, ch. 45, sec. 2.

2. **NEW TRIALS.   Motion for new trial made within thirty days
   after entry of verdict and judgment suspends judgment as non-
   existent for that purpose.**

   Where a judgment is entered on the verdict as a matter of
   course at the time of recording the verdict, as required by
   statute, leaving no time between the entry of the verdict
   and the entry of the judgment thereon, within which time
   the motion for a new trial can be made, the judgment is only
   quasi final until after the expiration of the thirty days from
   such entry, and if a motion for new trial is made within the
   thirty days, the judgment for the purposes of the motion
   and appeal is treated as nonexistent.   (*Post, pp.* 27, 28, 29.)

   Code cited and construed:   Sec. 5892, subsec. 3 (S.); sec. 4854,
   subsec. 3 (M. & V.); sec. 4077; subsec. 3 (T. & S.). and 1858).

   Acts cited and construed:   Acts 1805, ch. 45, sec. 2; Acts 1885,
   ch. 55.

3. **SAME.   Same.   Disposition of motion for new trial may be
   carried over into the time fixed by law for the next term.**

   The motion for a new trial is a part of the trial itself, and un-
   der the statute (Acts 1899, ch. 40) relating to the disposition

Railroad v. Ray.

of suits pending at or near the expiration of the term of court, its disposition may be carried over into the time allowed by law for the next term of the court. (*Post, p.* 27.)

Acts cited and construed: Acts 1899, ch. 40.

Cases cited and approved: Railroad v. Simmons, 107 Tenn., 392, 396; Ray v. State, 108 Tenn., 282, 298-301; Rhinehart v. State, 122 Tenn., 698.

4. SAME. Motion for new trial must be made to review matters required to be in bill of exceptions.

A motion for a new trial must be made in all cases where it is desired to review any matters proper to be recorded in a bill of exceptions. (*Post, pp.* 27, 28.)

Cases cited and approved: Railroad v. Johnson, 114 Tenn., 632; Seymour v. Railroad, 117 Tenn., 98.

5. SAME. Same. Motion for new trial must be acted on by trial court before supreme court will consider it.

The motion for a new trial must be considered by the trial court before it can be considered by the supreme court (Telephone & Telegraph Co. v. Smithwick, 112 Tenn., 463, 470), because the action of the trial court thereon is an indispensable prerequisite to the action of the supreme court in the review of matters proper to go into a bill of exceptions as indicated in the preceding headnote, and for the purpose of enabling the supreme court to say whether the trial court acted correctly in refusing a new trial, or under Acts 1875, ch. 106 (Railroad v. Conley, 10 Lea, 531; Morgan v. Bank, 13 Lea, 241; Baugh v. Railroad, 98 Tenn., 120; Jenkins v. Hankins, 98 Tenn., 548) granting a new trial. (*Post, p.* 28.)

Acts cited and construed: Acts 1875, ch. 106.

Cases cited and approved in the body of the headnote not restated here.

6. SAME. Appeal is prosecuted from judgment on verdict after motion for new trial is overruled, and not from the order on the motion; extent of review.

An appeal can only be prosecuted from a judgment on a verdict, when a new trial is refused by the trial court; and, for such

124 Tenn.—2

purposes of appeal, the judgment, although previously entered, really is effective as of the date of the order of the court overruling the motion for a new trial. The appeal is prosecuted from the judgment, and not from the order of the trial court overruling the motion for the new trial, and brings up for review all the points made in the motion for the new trial, and duly assigned for error in the appellate court. (*Post, p.* 28.)

7. **SAME. Motion for new trial made within thirty days after judgment may be disposed of after the expiration of the thirty days, and appeal lies within the thirty days thereafter; case in judgment.**

Where a motion for a new trial is made or filed within the thirty days from the rendition of the judgment, it may be disposed of after the expiration of such thirty days; as, where the judgment was entered on the verdict June 3d, 1910; the motion for the new trial was made or filed June 29th; called up by the court for hearing July 5th, 1910, and continued until the 6th, on which latter day it was argued and held under advisement until July 9th, 1910, when it was overruled, the court had jurisdiction to dispose of the motion, and an appeal might be prayed, perfected, and prosecuted from the judgment originally entered, within the thirty days from the overrulement of the motion for a new trial. (*Post, pp.* 22-27.)

Code cited and construed: Sec. 4898 (S.); sec. 3883 (M. & V.).

Acts cited and construed: Acts 1871, ch. 59; Acts 1885, ch. 65.

8. **SAME. Same. After overrulement of motion for new trial, thirty days additional may be allowed to give bond and perfect appeal.**

Where the motion for a new trial, made or filed within the thirty days after the entry of the judgment, but disposed of after that time, is overruled, the court may allow the appellant thirty days additional in which to give bond and perfect the appeal. (*Post, pp.* 22, 23, 24, 27.)

Code cited and construed: Sec. 4898 (S.); sec. 3883 (M. & V.).

Acts cited and construed: Acts 1871, ch. 59; Acts 1885, ch. 65.

Railroad v. Ray.

9. **APPEALS.** Statutes regulating the time for appealing and making appeal bond or taking the pauper's oath construed.

The object and purpose of Acts 1871, ch. 59, was to confer upon the circuit courts the power to grant time for the execution of appeal bonds, a power previously exercised by the chancery courts, so as to make the rule uniform in both circuit and chancery courts, but inasmuch as this act was construed to mean that the time granted for the execution of the bond should be computed from the day of the adjournment of the court, and not from the time when it was granted, Acts 1885, ch. 65, limiting the time for appealing to thirty days during the term, and allowing the court to extend the time to give the appeal bond or to take the pauper's oath, not exceeding thirty days additional, was passed to meet such hardship against the judgment holder and was intended to take the place of the previous act. (*Post, pp.* 23, 24.)

Code cited and construed:   Sec. 4898 (S.); sec. 3883 (M. & V.).

Acts cited and construed:   Acts 1871, ch. 59; Acts 1885, ch. 65.

Cases cited and approved:   McPhartridge v. Gregg, 4 Cold., 324, 326; Andrews v. Page, 2 Heisk., 634, 638; Ricks, ex· parte, 7 Heisk., 364; Jackson v. McDonald, 2 Shannon's Cases, 556; Adamson v. Hurt, 3 Shannon's Cases, 424; Davis v. Wilson, 85 Tenn., 383.

10. **SAME.** Same. Limitation of time for appealing by setting aside the judgment and entering a new judgment.

The statute limiting the time for appealing to thirty days cannot be evaded on the theory that the judgment is within the breast of the judge during the term, and that he can set it aside after the expiration of the thirty days, and enter a new judgment from which the appeal can be prosecuted. (*Post, pp.* 25, 26.)

Code cited and construed:   Sec. 4898 (S.); sec. 3883 (M. & V.).

Acts cited and construed:   Acts 1871, ch. 59; Acts 1885, ch. 65.

Cases cited and approved:   Railroad v. Johnson, 16 Lea, 387; Ellis v. Ellis, 92 Tenn., 471.

Railroad v. Ray.

11. **NEGLIGENCE.** Doctrine of turntable cases is not applicable where the person injured by car moving was not attracted there by the cars, but by the unloading of a boat.

Where the plaintiff, a boy about twelve years of age, in company with another boy of about the same age, observing a boat unloading its freight at a wharf into box cars of the defendant, to which wharf there was no land approach except across lots or along defendant's spur track, crossed the lots to the wharf, and, after a refusal of permission to stay aboard the boat, climbed upon defendant's box cars, standing close to the wharf on the spur track and properly secured by brakes and chocks, to watch the unloading of the boat into the cars, and while in this position heard a noise as if the cars were about to move, and, in jumping to the ground, broke his leg, it was *held* in an action against the defendant railroad company for this injury, that the doctrine of the turntable cases had no application, since the plaintiff was not attracted to the place by the cars, but by the unloading of the boat. (*Post, pp.* 22, 23, 29-38.)

12. **SAME.** Same. Turntable and attractive nuisance theories do not apply to cars left on commercial railroad to be loaded, when.

The theory of the turntable cases, or the attractive nuisance theory, while recognized by the court, does not apply to cars left standing by a commercial railway upon its spur track to be loaded in the ordinary course of business, especially where they are left in charge of a shipper engaged in loading, and in whose care they are for the time being. (*Post, pp.* 34, 35.)

Cases cited and approved: Bates v. Railroad, 90 Tenn., 36; Cooper v. Overton, 102 Tenn., 211, 237; Stone Co. v. Pugh, 115 Tenn., 688; Barney v. Railroad, 126 Mo., 372; Chicago v. McLaughlin, 47 Ill., 265; Railroad v. Jenks, 54 Ill. App., 91; Railroad v. Henigh, 23 Kan., 347.

Cases cited, approved, and distinguished. Whirley v. Whiteman, 1 Head, 610; Railroad v. Cargille, 105 Tenn., 628; Burke v. Ellis, 105 Tenn., 702.

Railroad v. Ray.

13. **SAME. Special instructions in cases involving turntable and attractive nuisance theories.**

In an action for negligence based upon the theory of the turntable cases, or attractive nuisance theory, the trial judge should give special instructions, as a matter of law, that the facts stated, if true, constitute the degree of negligence, or not, as the case may be, which would render the defendant liable or not liable in damages, as the case may be. (*Post, pp.* 36-38.)

Cases cited and approved: Whirley v. Whiteman, 1 Head, 624; Bates v. Railroad, 90 Tenn., 36; Cooper v. Overton, 102 Tenn., 211; Railroad v. Cargille, 105 Tenn., 628; Burke v. Ellis, 105 Tenn., 702; Stone Co. v. Pugh, 115 Tenn., 688.

14. **SAME. Peremptory instructions erroneously refused by the trial judge may be allowed by court of civil appeals, and the action dismissed.**

Where the trial judge erroneously refuses to give peremptory instructions for the return of a verdict for the defendant, there is no error in the judgment of the court of civil appeals granting the peremptory instruction, and dismissing the action. (*Post, pp.* 23, 29, 38.)

Cases cited and approved: Bates v. Railroad, 90 Tenn., 36; Cooper v. Overton, 102 Tenn., 211; Stone Co. v. Pugh, 115 Tenn., 688.

15. **EVIDENCE. Positive evidence is not affected by negative evidence of those whose attention was not called to the matter.**

Where there is positive evidence that cars were properly secured by brakes and chocks, it is immaterial that others did not so see the same, where it does not appear that their attention was called to the matter. (*Post, p.* 32.)

FROM DAVIDSON.

Appeal from the Second Circuit Court of Davidson County, Tennessee, to the Court of Civil Appeals, and by

*certiorari* from the Court of Civil Appeals to the Supreme Court.—M. H. MEEKS, Judge.

CLAUDE WALLER and FRANK SLEMONS, for Railroad.

JAMES P. ATKINSON, for Ray.

———

MR. JUSTICE NEIL delivered the opinion of the Court.

These two actions were brought in the circuit court of Davidson county against plaintiffs in error for an injury caused to James L. Ray, a minor about twelve years of age, as the result of his jumping from a freight car, the property of plaintiffs in error. The first action was brought by the father, and the second in behalf of the boy himself by next friend.

In the first case there was a recovery of $1,000, and in the second one of $2,500. The facts will be stated more at large when we reach the second branch of the case.

The first point presented is that the motion for new trial was not disposed of until the expiration of thirty days from the rendition of the judgments, and therefore that the matter was *coram non judice*, when the trial judge acted upon the motion. The verdict in each case was rendered on June 3, 1910, and judgment was rendered thereon on the same date. Motion for new trial was marked "Filed" by the clerk of the trial court on the 29th day of June, 1910, called up by the court for hearing July 5, 1910, continued until the 6th, on which

Railroad v. Ray.

latter day it was argued and held under advisement until July 9, 1910, when it was overruled. At the hearing of this motion, defendant in error objected to its consideration, upon the ground that any action relative thereto was beyond the power of the court, because the time for appeal expired after the expiration of thirty days from the date of the judgment on the verdict, relying upon Acts 1885, chapter 65, sections 1, 2. Plaintiffs in error prayed an appeal to the court of civil appeals, and on that date, July 9, 1910, were granted thirty additional days to give bond and perfect the appeal. When the case reached the court of civil appeals, the same point was there made and overruled. That court then proceeded to consider the case upon its merits and sustained the motion for peremptory instructions which had been made in the court below. Thereupon a petition was filed in this court for the writ of *certiorari.*

Prior to the act of 1885 was Acts 1871, c. 59, which was as follows:

"In all cases in the inferior courts of this State, wherein an appeal to the supreme court may hereafter be prayed and granted upon the terms now imposed by law, and the party appealing is a resident of another county or State, or is unable, by reason of physical inability, to be present, the court granting said appeal, may, in its discretion, allow the appellant time in no case exceeding thirty days, in which to give bond or file the pauper's oath for the prosecution of said appeal, and such appeal bond approved by the clerk of the court from which the appeal is taken, or the pauper's oath

filed with said clerk within the time allowed by the court, shall render said appeal as effectual as if done as now required by the law, during the term of court at which the judgment appealed from was rendered."

Before the act of 1871 the practice in chancery causes was for the chancellor to grant such length of time as he might see proper, even beyond the end of the term, for the execution of a bond for an appeal previously prayed (*McPhartridge* v. *Gregg,* 4 Cold., 324, 326; *Andrews* v. *Page,* 2 Heisk., 634, 638; *Adamson* v. *Hurt,* 3 Shan. Cas., 424; *Davis* v. *Wilson,* 85 Tenn., 383, 5 S. W., 285); but no such power was recognized as belonging to the circuit courts (*James Ricks, ex parte,* 7 Heisk., 364). To correct this practice, and to make the rule uniform in both circuit and chancery courts, the act of 1871 was passed. That act, however, was construed by this court in *Jackson* v. *McDonald,* 2 Leg. Rep., 21, 2 Shannon's Tenn Cases, 556, to mean that the grace given for execution of the bond should be computed from the day of the adjournment of the court, and not from the time at which it was granted. The result of this construction was that there were frequently great delays in the prosecution of appeals, and often they were not prosecuted at all after long indulgence had been granted under this construction, thereby delaying the enforcement of the judgment without any security to cover contingencies that might arise between the adjournment of the court and the time allowed. To meet this hardship, a great hardship, where the terms

Railroad v. Ray.

were long, covering several months, as in the cities, the act of 1885 was passed. It was as follows:

"Section 1. That hereafter when an appeal, or an appeal in the nature of a writ of error, is prayed from a judgment or decree of an inferior court to the supreme court, the appeal shall be prayed for and appeal bond shall be executed, or the pauper's oath taken, within thirty days from the judgment or decree, if the court hold so long; otherwise, before the adjournment of the court; but, for satisfactory reasons, shown by affidavit or otherwise, and upon application made within the thirty days, the court may extend the time to give bond or take the oath in term or after adjournment of the court; but in no case more than thirty days additional.

"Sec. 2. That in all cases where the appeal has not been prayed for within the time prescribed in the first section of this act, the judgment or decree may be executed."

This act covers all the ground previously covered by Acts 1871, chapter 59, and was intended to take its place, and the two were improperly amalgamated in section 4898 of Shannon's Code.

We thus see the evil which was intended to be remedied by the act of 1885 and the previous act. There was no purpose on the part of the legislature to interfere with the practice upon the subject of motions for new trial. It was held by this court in the case of *Railroad v. Johnson*, 16 Lea, 387, that it could not be evaded on the theory that the judgment was within the breast of the judge during the term, and that he could set it

Railroad v. Ray.

aside after the expiration of thirty days and enter a new judgment, from which the appeal could be prosecuted. It was held in *Ellis* v. *Ellis,* 92 Tenn., 471, 22 S. W., 1, that a motion to set aside a judgment by default could not be maintained, if made more than thirty days after the entry of such judgment, under the act of 1885 above reproduced; but in so doing the court pointedly remarked that no application had been made for a new trial within thirty days from the rendition of the final judgment, and no sufficient excuse had been given why the motion was not made within that time. This qualification indicated that, if there had been such motion made within thirty days, it could have been maintained and acted upon after the expiration of that period. Such, indeed, has been the universal practice of the circuit courts, the understanding of this court, and the view entertained by the bar in general, since the passage of the act of 1885. The judgment in the circuit court is entered by the clerk as a matter of course when he records the verdict. Shannon's Code, sec. 5892, subsec. 3. At common law there was always an interval between the entry of the verdict and the entry of the judgment within which time the motion for new trial could be made. There is no interval under our practice. Therefore the judgment is only quasi final until after the expiration of thirty days from its entry; that is, its finality is conditioned upon the absence of the entry of a motion for new trial within that time, and its subsequent sustainment by the court; or, we may add, the motion in arrest of judgment, or motion for a judgment *non obstante*

Railroad v. Ray.

*veredicto.* In other words, if a motion for new trial is made within the thirty days, the judgment for the purposes of the motion is treated as being nonexistent. If the motion for new trial is sustained, the verdict is set aside and the judgment goes with it; so if a motion in arrest of judgment is sustained, or a motion for judgment *non obstante veredicto,* the provisional entry of the judgment cannot interfere with any of these rights of the losing party. To hold otherwise would be not only to extend the provisions of the act of 1885 very far beyond its purposes, but it would unduly restrict the rights of litigants, and impose unwarrantable burdens upon trial judges who must, in the course of things, have sometimes several motions for new trial on hand at the same time in important cases, all requiring time and careful consideration. It would make it incumbent upon the trial judge to dispose of these motions within the limited time of thirty days from the date of the entry of the judgment, even though they did not come to him until near the expiration of that period, when it was impossible for him to give due thought to the disposition of them. As held by the court in *Street Railroad Co.* v. *Simmons,* 107 Tenn., 392, 396, 64 S. W., 705, the motion for new trial is a part of the trial itself, and may be carried over into the time allowed by law for the next term of the court, under Acts 1899, c. 40. *Ray* v. *State,* 108 Tenn., 282, 298-301, 67 S. W., 553; *Rhinehart* v. *State,* 122 Tenn., 698, 127 S. W., 445. Such motions must be made in all cases where it is desired to review any matters proper to be recorded

in a bill of exceptions (*Railroad* v. *Johnson*, 114 Tenn., 632, 88 S. W., 169; *Seymour* v. *Railroad*, 117 Tenn., 98, 98 S. W., 174); and they must be considered by the trial court before they can be considered by the supreme court (*Telephone & Telegraph Co.* v. *Smithwick*, 112 Tenn., 463, 470, 79 S. W., 803). The action of the trial court thereon is an indispensable prerequisite to the action of the supreme court, for the review of matters proper to go into a bill of exceptions as above indicated, for the purpose of enabling the supreme court to say whether the trial court acted correctly in refusing a new trial, or under the act of March 24, 1875 (*Railroad* v. *Conley*, 10 Lea, 531; *Morgan* v. *Bank*, 13 Lea, 241; *Baugh* v. *Railroad*, 98 Tenn., 120, 38 S. W., 433; *Jenkins* v. *Hankins*, 98 Tenn., 548, 41 S. W., 1028) granting a new trial. When a new trial is refused by the trial court, then only can an appeal be prosecuted from the judgment. For such purposes of appeal the judgment, although previously entered, really dates as of the order of the court overruling the motion for new trial. The appeal is then prayed, and if duly prosecuted brings up for review all of the points made in the motion for a new trial, and duly assigned for error in the appellate court, and that court thus acquires control of the judgment entered in the trial court. It is not correct to say, as held by the court of civil appeals, that the appeal is from the order of the lower court overruling the motion for new trial. As we have already stated, when a motion for new trial is made within thirty days the existence of the judgment is ignored, and upon the

motion being overruled the judgment for purposes of appeal must be treated as if then entered upon the verdict. The previous entry is made in obedience to the section of the Code above referred to (Shannon's Code, sec. 5892, subsec. 3; Acts 1805, c. 45, sec. 2), which was enacted to prevent the delay in entries of judgment which at common law sometimes resulted in the failure to make the entries altogether.

Plaintiffs in error assign as error the refusal of the trial judge to give a peremptory instruction in their favor.

The uncontroverted facts are in substance as follows:

In March, 1909, the minor in question, James L. Ray, went upon the Woodland street bridge that spans the Cumberland river between Nashville and East Nashville, in company with a boy about his own age, one James Gallagher, for the purpose of viewing the waters of the river; the river then being at a high stage. While on the bridge their attention was attracted to the steamer Bob Dudley, which was unloading some 250 feet to the northward. They decided to get a nearer view of this process, so descended the bridge by steps leading down to the ground about seventy feet below, then went through the premises of the Standard Box Company till they reached a bluff which constitutes the end of Main street, in East Nashville. They mounted this, and then descended by a steep path down to the vicinity of the Ryman elevator plant, which was situated about eighty feet from the river. From this they descended a

sloping path till they reached the wharf at which the unloading was in process. At this point the plaintiffs in error had caused to be located two box cars into which lumber was being unloaded from boats. Desiring to get a nearer view of what was going on, and also to secure a ride back across the river, one or both of the boys went upon the gang plank of the boat and made the request just indicated. This was refused. Concluding, then, that they could get a better view of the unloading of the boat by going upon the box cars, they did so. After having reached this elevation, they watched the unloading for a time, and, becoming dissatisfied with this entertainment, began to jump from one of the cars upon a pile of sand that lay near the car, which they had increased and built up with their own hands for the purpose. They jumped several times, and climbed back upon the car by its ladder. Tiring of this sport, they were just about to sit down on the edge of the car, when they heard a creaking noise under the car they were on, indicating that it was about to move. Alarmed by this noise, and fearing that the car would go into the river, which was within a few feet, they jumped off. Gallagher escaped without injury, by jumping on the sand pile; but Ray struck the bare ground and broke his leg. This was the injury for which he sued.

The place where the injury occurred was a wharf or landing used by the boats on the river for unloading freight from time to time which they had for the various factories in that neighborhood, of which there were a considerable number. There was a baseball ground about

one hundred yards away, which was used by small boys, and in which sport they were sometimes joined by the railroad employees for a few minutes at a time. It does not appear, however, that any game was going on near the period of the accident, or how long prior thereto. Quite a number of people congregated there from time to time to watch the unloading of the boats. A considerable number of boys were there also from time to time, especially near the Ryman elevator, engaged in picking up corn and other grain to feed to their pigeons. On one or more occasions it had been thought necessary by the people engaged in the unloading process to run the boys away from the cars. It does not appear, however, that the plaintiffs in error had any knowledge of this. They were not concerned with the wharf, except to furnish cars for transportation purposes, which cars on demand were shunted down on the spur track, which ran right by the margin of the river, so close that a gangway could be constructed, from the boats to the cars, into which freight could be transferred.

This track was on a grade of 235 feet to the mile. In order to make the cars stand so that they could be loaded, it was necessary that the brakes should be set, and also that the wheels should be chocked or scotched. The cars were delivered on the spur track at ten minutes after 7 o'clock on the morning in question. The injury occurred late in the afternoon. When the cars were placed at the point indicated, they were secured by the setting of the brakes and by chocking on the east side. The west side could not be chocked, because the wheels

stood in the water at the edge of the river, which was partly over the track.

The area of land within which the wharf lay may be roughly described as bounded on the south by the Woodland street bridge, on the east by First street in East Nashville, on the north by the property of the Kirkpatrick Company's mills, and on the west by the river. The Woodland street bridge was 250 feet distant. There was no approach to the wharf from this direction, except along the spur track of the railway, or across lots; the latter being the course pursued by the boys when they left the Woodland street bridge. To the north the country was open up to the Kirkpatrick Company's mills. There does not appear to have been any wagon road down to the wharf. It was merely a landing where freight was loaded into cars standing on the spur track from boats on the river. Of course, people on foot could get to it from over the rough way pursued by the boys, or more easily from the north and east.

It is insisted that the point is disputed whether the cars were properly secured by brakes and chocks; but what is said upon this subject in the evidence adverse to plaintiffs in error simply amounts to statements of witnesses that they did not see the chocks. A brakeman of the railway company testified that he put the brakes on, and another that he saw the brakes put on, and the latter that he himself put the chocks under the car. No one disputes this. The fact that others did not see it would amount to nothing; it not appearing that their attention was called to the matter.

Railroad v. Ray.

It is a disputed matter as to whether the boys were ordered off the cars. Some witnesses for the plaintiffs in error say that they were so ordered; but the boys say they were not. There is also a dispute as to whether the boys interfered with the brakes upon the car. One witness for the plaintiffs in error testified that he saw them doing so; but the boys say they did not.

The moving of the cars is accounted for by the witnesses for the plaintiffs in error by testimony to the effect that loading heavily tends to press the car down upon the springs, thereby lowering the body of the car, and loosening to some extent the brake shoe. It is supposed that something of this kind occurred. The second car was already loaded with lumber, and the first or upper car was about half loaded, when the cars began to move. They ran over only about fifteen feet, and were stopped by a bumper at the end of the spur track.

In the view that we take of the case, the disputed points are immaterial.

It may be conceded, as the jury found, that the boys did not interfere with the brakes, and that they were not ordered from the cars. However, as to this latter point there is no evidence to the effect that it was known by the plaintiffs in error, or any of its agents, that the boys were on the cars, but only by the boat people engaged in unloading the boats.

The examination of James L. Ray shows that he is a very bright, alert, and intelligent boy; also well advanced in his school studies for a person of his age.

124 Tenn.—3.

The question to be determined is whether the attractive nuisance theory, or what is generally known as the law of the "turntable cases," applies to the facts stated.

We are of the opinion that it does not. Aside from the fact that the cars were properly secured when the servants of the plaintiffs in error left them in the morning, and they had no knowledge that boys were occasionally at the place where the cars were, and had been run away from there a time or two prior to the occasion in question by the agents of the boat companies while engaged in unloading, and aside from the fact that plaintiffs in error's servants knew nothing of the presence of the boys at the time the defendant in error James L. Ray was hurt, and aside from the remoteness of the place where the cars were standing, we think the law referred to does not apply, because the boys were not attracted to the spot by the cars, but by the boat, which was in course of unloading, and only mounted the cars, after they reached the place, as a vantage ground for witnessing the process of unloading the boat. We are also of the opinion that the attractive nuisance theory does not apply to cars standing upon a commercial railway, left to be loaded, in the ordinary course of the company's business; certainly not when they are left in charge of the shipper, who is engaged in the act of loading, and in whose care the car is for the time being. There are authorities which hold that it does not apply to such cars at all; that is, to standing railroad cars. *Barney* v. *Hannibal & St. J. R. Co.*, 126 Mo., 372, 28 S. W., 1069, 26 L. R. A., 847; *Chicago & A. R. Co.* v. *Mc-*

*Laughlin,* 47 Ill., 265; *East St. Louis Connecting R. Co.* v. *Jenks,* 54 Ill. App., 91; *Central Branch Union P. R. Co.* v. *Henigh,* 23 Kan., 347, 33 Am. Rep., 167.

In the brief of counsel for plaintiffs in error our attention is called to several cases from other States in which the whole doctrine expressed by the attractive nuisance theory is repudiated, and others in which it is confined to the specific case of turntables left unfastened and unguarded. In addition, we have examined numerous other cases. A full collection of the authorities, and a discussion of them, may be found in a note to *Cahill* v. *E. N. & A. L. Stone & Co.* (Cal.), 19 L. R. A. (N. S.), 1095-1165, and the cases reported therewith—*Wilmot* v. *McPadden,* 79 Conn., 367, 65 Atl., 157, 19 L. R. A. (N. S.), 1101; *Swartwood* v. *Louisville & N. R. Co.,* 129 Ky., 247, 111 S. W., 305, 19 L. R. A. (N. S.), 1112, 130 Am. St. Rep., 465; *Briscoe* v. *Henderson Lighting & P. Co.,* 148 N. C., 396, 62 S. E., 600, 19 L. R. A. (N. S.), 1116; *Wheeling & L. E. R. Co.* v. *Harvey,* 77 Ohio St., 235, 83 N. E., 66, 19 L. R. A. (N. S.), 1136, 122 Am. St. Rep., 503; *Thompson* v. *Baltimore & Ohio R. Co.,* 218 Pa., 444, 67 Atl., 768, 19 L. R. A. (N. S.), 1162, 120 Am. St. Rep., 897. Other cases, since the publication of that volume, are found in *Kelly* v. *Benas,* 217 Mo., 1, 116 S. W., 557, 20 L. R. A. (N. S.), 903; *Hermes* v. *Hatfield Coal Co.,* 134 Ky., 300, 120 S. W., 351, 23 L. R. A. (N. S.), 724; *Brown* v. *Chesapeake & O. R. Co.,* 135 Ky., 798, 123 S. W., 298, 25 L. R. A. (N. S.), 717; *Covington & C. R. T. & B. Co.* v. *Mulvey,* 135 Ky., 223, 122 S. W., 129, 26 L. R. A. (N. S.), 204; *Olson* v. *Gill*

*Home Invest. Co.,* 58 Wash., 151, 108 Pac., 140, 27 L. R. A. (N. S.), 884; *Sweeden* v. *Atkinson Improv. Co.* (Ark.), 125 S. W., 439, 27 L. R. A. (N. S.), 124.

We do not deem it necessary for the purposes of the present case to enter upon a general discussion of the subject. We have in our own State six cases: *Whirley* v. *Whiteman,* 1 Head, 610 (1858) ; *Bates* v. *Railway* Co., 90 Tenn., 36, 15 S. W., 1069, 25 Am. St. Rep., 665 (1891) ; *Cooper* v. *Overton,* 102 Tenn., 211, 52 S. W., 183, 45 L. R. A., 591, 73 Am. St. Rep., 864 (1899) ; *Railroad* v. *Cargille,* 105 Tenn., 628, 59 S. W., 141 (1900) ; *Burke* v. *Ellis,* 105 Tenn., 702, 58 S. W., 855 (1900) ; *Stone Co.* v. *Pugh,* 115 Tenn., 688, 91 S. W., 199 (1905). In *Whirley* v. *Whiteman* the court was committed to the doctrine. In that case it appeared that a child but little more than three years of age was injured by some exposed cogwheels, revolving within from ten to twenty inches from the ground, on the outside of a mill, within twenty feet of a public street in the city of Nashville, in an open space, wholly exposed, without any cover, guard, or inclosure whatever, and that children were accustomed to play about the mill every day. It was shown that the wheels might have been boxed at very trifling expense, or an inclosure made around them so as to secure them aginst possibility of injury to any one; also that on the day in question the mill was left running with no one to watch, direct, or guard the machinery, while all of the operatives went to their noon meal, and that during their absence the injury was inflicted. On the facts it was held that the owner of the mill was

liable. In *Bates* v. *Railway,* the doctrine was conceded, but held not to apply to a turntable which was sufficiently fastened to keep it securely in place when unmolested. In *Railroad* v. *Cargille,* it was held to apply to a turntable which was uninclosed, and wholly unfastened; and in *Burke* v. *Ellis,* to an open flat car loaded with loose earth, where the child was invited, or at least permitted, upon the car with the knowledge of the superintendent of the company. In *Cooper* v. *Overton,* it was held not to apply to a pond of water formed by recent rains upon a vacant city lot, the property of a nonresident owner, the existence of which pond was unknown to the owner who had his lot viewed by his agent once every two months, and where it appeared that the water would not have gathered into a pond except for the unauthorized act of the city in filling with garbage, unknown to the owner, the mouth of a drain that ran across the lot; and that the lot was fifty feet from the nearest street and the pond had nothing on it to make it attractive for children except a plank, and that the owner of the lot did not know that the plank was there. It appeared there was a school in the neighborhood, and that children played upon this lot, occasionally, or from time to time. It was said that: "The liability does not exist, even in the case of children, unless they are induced to enter upon the land by something unusual and attractive placed upon it by the owner, or with his knowledge permitted to remain there." Ib., 237. In *Stone Company* v. *Pugh,* it was held that it did not apply to a low-hung wagon, made for hauling heavy stone, driven into the

yard of an asylum where a large number of children were kept, and cared for during the day, the wagon and team being in charge of a competent driver. In this case, it was held that *Burke* v. *Ellis* should be confined to its own facts. It should be remembered that while the doctrine is recognized here, and applied in proper cases, the recent authorities have shown a disposition to limit its application. It should further be noted that in all of the cases the court itself has, in one form or another, determined the classes of cases or subjects to which the doctrine applies. In *Whirley* v. *Whiteman,* it was said in the opinion that the trial judge should have "instructed the jury specially, as a matter of law, that the facts stated, if true, constituted the degree of negligence which would render the defendants liable in damages." 1 Head, 624. So, in *Burke* v. *Ellis* it was held that the facts proven made a case for the application of the doctrine. *Railroad* v. *Cargille* stood on declaration and demurrer. In *Bates* v. *Railroad* it was held that a specific instruction should have been given to the jury, which instruction really determined whether the case proven fell within the class of cases covered by the doctrine. In *Cooper* v. *Overton,* it was determined that the facts which we have recited did not make a case for the application of the doctrine, and so in *Stone Co.* v. *Pugh.* Such is the state of the law in Tennessee upon this subject.

On the grounds stated, we are of the opinion there is no error in the judgment of the court of civil appeals, granting the peremptory instruction and dismissing the actions, and the *certiorari* is therefore refused.