## J. A. STRICKLIN v. LOUISVILLE & NASHVILLE RAILROAD COMPANY.

Middle Section.   January 29, 1926.

No petition for Certiorari was filed.

1. **Appeal and error.** Trial judge cannot grant more than thirty days at any one time within which to file appeal bond.

     In an action where trial court granted appellant sixty days within which to file appeal bond, held under the statute (Shannon's Code, section 4898) the trial judge is not authorized to grant more than thirty days at any one time and cannot grant sixty days in the first instance.

2. **Appeal and error.** Where appeal bond is filed more than thirty days after judgment it is too late to perfect appeal.

     Even though court granted sixty days within which to file appeal bond if bond is filed more than thirty days after judgment it is too late and appeal is defective.

3. **Appeal and error.** When filing of appeal bond is not condition precedent appellate court may permit bond to be filed in appellate court.

     Where the trial court grants the appeal without condition then the appellate court immediately acquires jurisdiction without more, and if the appellant attempts to execute an appeal bond in the lower court, but it is defective for some reason, or, if filed too late, then this court may permit a new appeal bond to be executed in this court; but where the appeal was granted upon condition that a proper appeal bond be executed within a certain time, within the thirty days allowed by the statute, then the appellate court does not acquire jurisdiction until that condition has been complied with.

4. **Appeal and error. Assignment of error not specific may be aided by brief.**

When an assignment of error, which is not in itself specific and definite, is accompanied by brief that is full, definite and explicit, the two papers will be taken and considered as one, and together constitute a sufficient compliance with the rule of this court as to assignment of error.

5. **Evidence. Burden of proof is on plaintiff to show crossing has been designated a public crossing.**

In an action alleging negligence on part of railroad for failure to comply with sub-section 2, Shannon's Code 1574, requiring that the whistle or bell be sounded at crossing, held burden on plaintiff to show that crossing had been designated as such by required signals.

6. **Negligence. When party knows of danger of crossing it is negligence not to slow down before crossing.**

Where party knows that trains approaching crossing were coasting down hill and ran noiselessly and knew that view was obstructed until he was in twenty feet of crossing, held negligence to cross at a rapid rate of speed without slowing down to look for train, and such negligence will bar action on common law counts.

7. **Negligence. Statutory liability.**

There is no liability on statutory counts, where the obstruction appears suddenly on the track and the servants on the lookout ahead sound the whistle, put down the brakes and do everything possible to stop the train and avert the accident.

8. **Appeal and error. Evidence held to warrant a directed verdict.**

In an action to recover damages for injury sustained by being struck by a train where all the evidence showed defendant's servants were on the lookout ahead and observed the statutory precautions, and the plaintiff offered no evidence to the contrary, except a statement of the engineer which was admissible only for purpose of contradicting witness, held verdict properly directed for defendant.

9. **Evidence. Judicial notice. Courts will take judicial notice of incorporation of a town but not of its corporate limits or boundaries.**

The courts will take judicial notice of the incorporation of a town by the State Law, but it cannot take judicial notice of the location of the corporate limits or boundaries thereof.

10. **Statutes. Subsection three Shannon's Code 1574, applies only to accidents within the corporate limits of a town or city.**

Subsection three, Shannon's Code 1574, requiring that when a train is approaching a town or city the bell or whistle shall be sounded when the train is at the distance of one mile and at short intervals until it reaches the station, held applies only to accidents within the corporate limits, and not to injury received outside the corporate limits of incorporated towns.

11. **Negligence. Failure to stop automobile before going upon railroad as required by chapter 36, Acts 1917, does not bar recovery on statutory counts.**

Failure to stop automobile as required by chapter 36, Acts 1917, held not to bar a recovery on statutory counts, but the failure is contributory negligence that should be taken into consideration by the jury in mitigation of damages.

Appeal in Error, from Circuit Court, Lawrence County; Hon. W. B. Turner, Judge.

Affirmed.

W. H. Lindsey, of Lawrenceburg, for plaintiff in error, Stricklin.

Morrison & Morrison, of Lawrenceburg, Hughes & Hughes, of Columbia, and Jno. B. Keeble, of Nashville, for defendant in error, Railroad.

CROWNOVER, J.   This is an action to recover damages for per-sonal injuries and for the demolition of plaintiff's automobile caused by a collision with the defendant's freight train.  At the close of all the evidence the trial judge directed a verdict for the defendant. The plaintiff in error moved for a new trial, which was overruled. He has appealed in error to this court and has assigned errors.

The judgment was entered on April 22, 1925, and the court allowed plaintiff in error sixty days in which to execute an appeal bond and to file a bill of exceptions. The appeal bond was filed May 30, 1925, and the bill of exceptions was filed on June 1, 1925.

It will thus be seen that the appeal bond was filed more than thirty days after the entry of the judgment.  Under the statute (Shannon's Code, sec. 4898) the trial judge is not authorized to grant more than thirty days at any one time and cannot grant sixty days in the first instance.

We had this question before us in numerous cases and especially in the case of George W. Harbin v. Mrs. M. I. Harbin, Lincoln County Equity, decided at Nashville, September Term, 1923.  That case was strongly contested and a petition to rehear was filed, and our court said in its opinion:

"We have again carefully examined the Act of 1885 (Shannon's Code, sec. 4898), and have carefully considered the petition to rehear, but are constrained to adhere to our former ruling in this case.

"In the case of R. R. v. Ray, 124 Tenn., 16, 23, Judge Neil said:

" 'Prior to the Act of 1885 was Act 1871, ch. 59, which was as follows:

" 'In all cases in the inferior courts of this State, wherein an appeal to the Supreme Court may hereafter be prayed and granted upon the terms now imposed by law, and the party appealing is a resident of another county or State, or is unable, by reason of physical inability, to be present, the court granting said appeal, may in its discretion, allow the appellant time in no case exceeding thirty days, in which to give bond or file the pauper's oath for the prosecution of said appeal, and such appeal bond approved by the clerk of the court from which the appeal is taken or the pauper's oath filed with said clerk within the time allowed by the court, shall render said appeal as effectual as if done as now required by the law, during the term of court at which the judgment appealed from was rendered.

" 'Before the Act of 1871 the practice in chancery causes was for the chancellor to grant such length of time as he might see proper, even beyond the end of the term, for the execution of a bond for an appeal previously prayed (McPhatridge v. Gregg, 4 Cold., 324, 326; Andrews v. Page, 2 Heisk., 634, 638; Adam-

son v. Hurt, 3 Shan. Cas. 424; Davis v. Wilson, 85 Tenn., 383, 5 S. W. 285) but no such power was recognized as belonging to the circuit courts (James Ricks ex parte, 7 Heisk., 364).

" 'To correct this practice, and to make the rule uniform in both circuit and chancery courts, the Act of 1871 was passed. That Act, however, was construed by this court in Jackson v. McDonald, 2 Leg. Rep., 21, 2 Shan. Tenn. Cases, 556, to mean that the grace given for execution of the bond should be computed from the day of the adjournment of the court, and not from the time at which it was granted. The result of this construction was that there were frequently great delays in the prosecution of appeals, and often they were not prosecuted at all after long indulgence had been granted under this construction, thereby delaying the enforcement of the judgment without any security to cover contingencies that might arise between the adjournment of the court and the time allowed. To meet this hardship, a great hardship, where the terms were long, covering several months, as in the cities, the Act of 1885 was passed. It was as follows:

" '(Section 1.) That hereafter when an appeal or an appeal in the nature of a writ of error, is prayed from a judgment or decree of an inferior court to the Supreme Court, the appeal bond shall be executed, or the pauper's oath taken, within thirty days from the judgment or decree, if the court hold so long, otherwise, before the adjournment of the court; but for satisfactory reasons, shown by affidavit or otherwise and upon application made within the thirty days, the court may extend the time to give bond or take the oath in term or after adjournment of the court; but in no case more than thirty days additional.

" '(Section 2.) That in all cases where the appeal has not been prayed for within the time prescribed in the first section of this Act, the judgment or decree may be executed.''

" 'This Act covers all the ground previously covered by Acts 1871, chapter 59, and was intended to take its place, and the two were improperly amalgamated in section 4898 of Shannon's Code.

" 'We thus see the evil which was intended to be remedied by the Act of 1885 and the previous Act. There was no purpose on the part of the Legislature to interfere with the practice upon the subject of motions for new trial. It was held by this court in the case of Railroad v. Johnson, 16 Lea, 387, that it could not be evaded on the theory that the judgment was within the breast of the judge during the term, and that he could set it aside after the expiration of thirty days and enter a new judgment from which the appeal could be prosecuted.'

"As stated by Judge Neil, the two Acts,—chapter 59 of the Acts of 1871 and chapter 65 of the Acts of 1885—were improperly combined in section 4898 of the Code, as the Act of 1885 was intended to cover all the ground previously covered by the Act of 1871 and was intended to apply to suits in chancery as well as actions in the circuit courts.

"The Act of 1885 expressly states:

"The appeal shall be prayed for and appeal bond shall be executed, or the pauper's oath taken within thirty days from the entry of the judgment or decree, if the court holds so long; otherwise, before the adjournment of the court, but for satisfactory reasons shown by affidavit or otherwise, and upon application made within the thirty days, the court may extend the time to give bond or take the oath in term or after adjournment of the court: but in no case more than thirty days additional.

"This Act simply means that the appeal must be prayed for and appeal bond executed or pauper's oath taken within thirty days from the date of the entry of the judgment or decree, if the court holds so long, but if the court adjourns before, then these requisites for appeal must be complied with before the adjournment of court; but upon application made before adjournment of the court, within thirty days after the entry of the judgment or decree, the court may extend the time an additional thirty days in which to give bond or take the oath.

"In other words, if the court remains in session longer than thirty days after the judgment or decree, the bond or oath must be filed within the thirty days, unless, appellant makes proper application for a further extension of time, upon which application, and, if satisfactory reasons are shown by affidavit or otherwise, the court may grant additional thirty days' extension, in which to file the bond or take the pauper's oath, but the court has no power to grant longer than thirty days at any one time. If the court remains in session he may apply at any time within the thirty days for the additional thirty days. If the court adjourns before the thirty days expire, the appellant may, upon application be granted further time not to exceed thirty days additional, and bond or oath may thus be filed in term or after the adjournment of court; but, of course this additional thirty days' extension should not be granted except upon proper application and for satisfactory reasons shown by affidavit or otherwise. The nonresidence of the appellant or other situations may arise whereby it would work a hardship on appellant to be compelled to immediately execute the bond. These and other conditions might arise that would be satisfactory reasons for the judge or Chancellor to grant the additional thirty days' extension

under the statute, but in no event, is the Chancellor or judge authorized to grant sixty days' extension in the first instance."

Hence, in this case it is clear that the appeal bond was filed too late, but the execution of the appeal bond was not made a condition precedent to the appeal, and we may allow the plaintiff in error to file an appeal bond in this court. See, Jones v. Ducktown Sulphur, Copper & Iron Company, 1 Cates, 375.

The distinction made by our Supreme Court, is that where the trial court grants the appeal without conditions then the appellate court immediately acquires jurisdiction without more, and if the appellant attempts to execute an appeal bond in the lower court, but it is defective for some reason, or, if filed too late, then this court may permit a new appeal bond to be executed in this court; but where the appeal was granted upon condition that a proper appeal bond be executed within a certain time, within the thirty days allowed by the statute, then the appellate court does not acquire jurisdiction until that condition has been complied with. If the condition has not been complied with then the appeal has not been perfected. See Morris v. Smith, 1 Shan. Cases, 27; Hale v. Parmley, 1 Shan. Cases, 29.

The appeal bond, in this case having been filed thirty-seven days after the entry of the order granting the appeal, which is not within the time allowed by the statute, it is a nullity. The appeal must be dismissed unless he files another bond in this court. Therefore, an order will be entered allowing the plaintiff in error fifteen days, in which to make and file a good and solvent appeal bond in this court, otherwise the appeal will be dismissed.

## OPINION ON THE MERITS.

On a former day of this term, November 28, 1925, the plaintiff in error was allowed fifteen days in which to file a proper appeal bond, which order has been complied with, and the case is now before us on its merits.

This is an action to recover damages for personal injuries and for damages to plaintiff's automobile, caused by a collision with defendant's freight train at a public crossing outside the corporate limits of the town of Lawrenceburg but within one mile of the corporate limits of said town.

The plaintiff sued for two thousand dollars, and the declaration contains four counts, two of which are for damages for personal injuries—one for the violation of the statutory precautions, Shannon's Code, section 1574, subsections 2, 3 and 4, and the other a common-law count alleging, in effect, that said crossing was dangerous, as plaintiff's view was obstructed by peach trees and other shrubbery so that he could not see a train approaching the crossing from the north, and that defendant's engine and train were being run, at the time, at a dangerously rapid rate of speed, noiselessly coasting down

grade, and that its servants gave no alarm or notice of its approach to said crossing at and immediately before the accident; while the two other counts were for damages to plaintiff's automobile—one for the violation of said statutory precautions, above mentioned, and the other a common-law count for a breach of the common-law duties, as above set out.

The defendant pleaded the general issue of not guilty.

The plaintiff was permitted to amend his summons and declaration so as to sue for $3,000.

The first trial resulted in a verdict of $1,000 for the plaintiff, which was set aside, and the case was again tried by the court and a jury. Motions were made for peremptory instructions, both, at the close of the plaintiff's proof, which was overruled, and at the close of all the evidence. The last motion was sustained and the court directed a verdict for the defendant. Plaintiff excepted and moved the court for a new trial.

Said motion for a new trial was, in substance, that the court erred in directing a verdict:

(1) Because the evidence conflicted as to whether the defendant sounded the whistle at a distance of one mile from the corporate limits of the town of Lawrenceburg and at short intervals until the train reached the station.

(2) Because the evidence conflicted on a material question as to whether a peach tree in full foliage and other shrubbery obstructed plaintiff's view of the track and the moving train on his approach to and entry upon the crossing at the time the accident occurred.

(3) Because, the declaration alleged that the defendant was negligent, in that, no one upon the locomotive was on the lookout ahead, and that the engineer testified that he was on the lookout ahead and blew the whistle, whereas, he had stated to the plaintiff and others, in a conversation after the accident, that he was at the time looking across the country and was not looking ahead on approaching the crossing and did not see plaintiff, which conflict in the evidence should have been submitted to the jury.

(4) That the declaration alleged a breach of the statutory precautions, in that, the defendant's agents and servants did not sound the whistle at one mile from the corporate limits and at short intervals until it reached the station, and that it had no one upon the locomotive upon the lookout ahead, and that when the plaintiff entered upon the track it failed to sound the alarm whistle and to put down the brakes, and to do anything possible to avoid the accident; and, that the declaration further alleged that the train was, at the time of the accident, running at

a dangerous and rapid rate of speed, and its servants gave no alarm or notice of the approach to the crossing, and that there was material testimony both for and against these theories, and proof on both sides as to every allegation, which should have been submitted to the jury.

The court overruled said motion for a new trial, and plaintiff excepted, and has appealed in error to this court and has assigned errors, that is, he has not formally assigned errors, other than that the court erred in directing a verdict against the plaintiff, but his brief, attached to his assignment of errors, to some extent discusses some of the grounds of his motion for a new trial, properly citing the pages of the record and the law. This is perhaps sufficient in a case of this kind, where a verdict has been directed, in view of the holding in the case of Wallace v. Goodlett, 104 Tenn., 670, in which our Supreme Court said:

"When an assignment of error, which is not in itself specific and definite, is accompanied by brief that is full, definite, and explicit, the two papers will be taken and considered as one, and together constitute a sufficient compliance with the rule of this court as to assignment of error."

But it has been repeatedly held that an assignment of error must state not only the action of the court complained of, but also, the reasons why it is erroneous. (Powers v. McKenzie, 90 Tenn., 167; Railway v. Overcast, 3 Hig., 235; Wheeler v. Parr, 3 Hig., 375). Errors should be formally assigned, briefly setting out the grounds with as much precision as in a motion for a new trial, and giving the reasons why the trial court was in error, then argument should follow as laid down by the rules of this court. (151 Tenn., 815; 1 Tenn. App. Rep., 830). Counsel should familiarize themselves with these rules and practice accordingly, so that much valuable time may be saved by the court.

Evidently that part of the declaration, in which subsection 2 of the statutory precaution (Shannon's Code, sec. 1574) requiring that the whistle or bell be sounded at a distance of one-fourth of a mile from the crossing, has been abandoned by the plaintiff in error, as there was no proof that the public crossing had been designated as such by the required statutory signals. The burden of proof on this proposition was on the plaintiff. See Railroad v. McDonough, 13 Pick., 255; Graves v. Railroad, 18 Cates, 166.

Apparently the common-law counts have also been abandoned by the plaintiff in error. We cannot tell from an examination of his brief whether he is still relying upon them. However, the trial judge was not in error in directing a verdict as to them, because the plaintiff was guilty of negligence that proximately contributed to his injuries, in that, according to his own evidence, his view was not obstructed when he was within from fifteen to twenty feet of the

track at the crossing. He lived within a short distance of the crossing, and had passed over it daily for several months, and knew that trains noiselessly coasted down grade for one-half mile coming south approaching said crossing, and that there were peach trees and other shrubbery that obstructed his view on the north until he was within from fifteen to twenty feet of the track. Knowing all these things, it was his duty to slow down, and look and listen on approaching the track, the failure of which is negligence that proximately contributed to the accident, and bars the recovery in common-law actions. See Opinion of the Court of Civil Appeals rendered by Judge Clark in in the case of R. E. Meriwether, Admr., v. N. C. & St. L. Railway and others, Dickson County Law, decided at Nashville on December 6, 1924, which was affirmed by the Supreme Court; Railroad v. McMillan, 134 Tenn., 490; Todd v. Railroad, 135 Tenn., 92.

It is a well-settled rule of law that a railroad track is an admonition of danger, under such circumstances, and that it is an act of negligence for a person to go upon such track without looking and listening.

This leaves only the two statutory counts which allege the nonobservance of subsections 3 and 4 of Shan. Code 1574, to which the assignments of error are really directed.

It is insisted that the defendant did not observe the precautions required by subsection 4, in that, it had no one upon the locomotive upon the lookout ahead, and that when he became an obstruction upon the track it failed to sound the alarm whistle and put down the brakes, and to use every means possible to stop the train and to avoid the accident.

The plaintiff's testimony is that he lived between the Jackson Highway and the defendant's railroad track, and about three hundred or four hundred yards north of said crossing, that said Jackson Highway leads out of Lawrenceburg north, and parallels the railroad for almost a mile, when it turns abruptly to the right and crosses said railroad track, and then leads north parallel with the railroad for a distance of three or four miles; that it is down grade from plaintiff's house to said grade crossing, and that it was customary for the trains in going south to cut off the steam and coast or drift down grade past said crossing; that plaintiff owns a farm where he lives just north of the crossing and also owns and operates a cotton gin in Lawrenceburg, and it is necessary for the plaintiff to go from his residence to his cotton gin, passing over said crossing, daily. Plaintiff further testified "for a considerable distance south of this crossing the railroad was to the east and to the right of the plaintiff, and but a short distance away and there was no obstruction as to the view of the railroad south of the crossing, but plaintiff said that where the highway turned east to cross the railroad going north, there were two

peach trees, one on the railroad right-of-way and one just inside of a garden or truck patch off the right-of-way, and that there was also a small oak tree and other shrubbery that cut off the view of a person going north on the highway until they got within fifteen or twenty feet of the railroad.''

Witness stated that he was well acquainted with this crossing and was in the habit of crossing it two or three times a day for several months prior to the accident, and stated that he was driving at the time of the accident at the rate of about fifteen miles per hour, and that as he approached the crossing he listened but did not hear any train, north of the crossing, but he did not stop or check his car, and when he was within fifteen or twenty feet of the railroad track, where his view north of the crossing was not obstructed, he saw a freight train aproaching at a distance of between forty-five and fifty feet, and that he thought that about the time he saw the train the engineer saw him and sounded the alarm whistle. He said the train ''was traveling at a pretty fast speed but he did not know how fast,'' that there was a ditch on each side of the highway at the point where he discovered the approaching train, that his brakes were in good condition but that he knew that he could neither stop nor turn to either side on account of these ditches and that he did not have time to stop his car as he was too near the track and knew that if he made an effort to do so and applied his brakes, that the car would more than likely stop on the track and that he would be killed, so that he thought the only chance that he had was to speed up the car and try to get across before the train, that he attempted this by feeding the car more gas, and that he had almost crossed the track, but not entirely, and that the front of the engine struck the rear of his car and whirled it around, damaging the car and injuring him. He further testified that when the train struck his car and whirled it around he heard the brakes of the train go on and they ''squeaked and screamed and he saw fire flying from the wheels,'' and that the brakes were not applied until the car was struck.

No other eye-witness for the plaintiff testified with reference to the breach of the statutory precautions required by subsection 4. The plaintiff and his wife testified to a certain conversation had with the engineer of the train a few days after the accident at Florence, Alabama. They testified, that in this conversation, the engineer stated that he was looking off across the country and did not see the plaintiff, and could not have seen him on account of the obstruction.

By Shannon's Code, section 1575, every railroad company that fails to observe the statutory precautions is made responsible for all damages to persons or property occasioned by, or resulting from, any accident or collision that may occur. The burden is on the plaintiff to show that the injuries were caused as a result of the collision

while he was an obstruction on the track, and then the burden of proof shifts to the defendant to show the observance of the statutory precautions. Shannon's Code, section 1576.

The defendant's witnesses testified that it did observe said statutory precautions, in that, the engineer was on the engine looking ahead, and had good eyesight, that the train was running at the rate of about twenty-five miles per hour, was equipped with air brakes, in good condition, and when the automobile appeared within fifteen or twenty feet of the track, the alarm whistle was sounded, the air brakes immediately applied, and caught at once, and the train (consisting of an engine, seventeen cars and caboose) ran about a train's length before it stopped; that applying the brakes and sounding the alarm whistle was all that they had time to do or could do, and that it was impossible to stop the train and avoid the collision, and that there was nothing else that could have been done to avoid the accident. The plaintiff has introduced no competent proof to the contrary.

The fact that the engineer told the plaintiff shortly after the accident that he was looking across the country and that he did not and could not see him on account of the obstruction was not admissible as substantive evidence against the railroad, but was only admitted for the purpose of contradicting the witness and only went to his credibility.

We think there is no statutory liability where the freight train was running at the rate of twenty-five miles per hour and was only forty-five or fifty feet away when the automobile suddenly came into view, fifteen or twenty feet from the track, and the alarm whistle was immediately sounded and the brakes put down, and every possible means employed to stop the train and to prevent the accident. It results that this assignment of error must be overruled.

The main insistence raised by the assignment of error is the non-observance of subsection 3 of the statutory precautions. That section is as follows:

"On approaching a city or town the bell or whistle shall be sounded when the train is at a distance of one mile, and at short intervals till it reached its depot or station; and on leaving a town or city the bell or whistle shall be sounded when the train starts and at intervals till it has left the corporate limits." Shannon's Code, sec. 1574, subsection 3.

The plaintiff below introduced several witnesses to show that these precautions had not been observed, while the defendant introduced witnesses tending to show that they had been observed; it is, therefore, insisted by the plaintiff in error that this was a controverted fact that should have been submitted to the jury, while the defendant in error insists that this accident happened between the corporate limits of the town of Lawrenceburg and the one mile post, and on

the outside of the corporate limits, and that the legislature never intended that this section should be applicable to a collision that took place between a point a mile from the corporate limits and the limits of an incorporated town, and that this statute was only intended to apply to persons within the corporate limits.

There is a preliminary question to be settled before we can consider this assignment. Defendant in error insists that there is no proof that the town of Lawrenceburg was incorporated and no sufficient proof as to the location of its corporate limits, and that the courts cannot take judicial knowledge of such facts. These questions have been settled in Tennessee by our Supreme Court. The courts will take judicial notice of the incorporation of a town by the State law, but it cannot take judicial notice of the location of the corporate limits or boundaries thereof. See Telephone Co. v. Weaver, 146 Tenn., 511; 243 S. W., 299; Alexander v. Railroad, 139 Tenn., 52, and authorities there cited. After an examination of the record, we think that while the exact location of the corporate limits is not established, yet we think that the proof shows that the collision occurred outside the corporate limits, between the one mile whistling post and the corporate limits of Lawrenceburg.

After an examination of the authorities, we are of the opinion that said subsection 3 applies only to accidents within the corporate limits, and not to injury received outside the corporate limits of incorporated towns.

So far as we have been able to ascertain our Supreme Court has never directly passed on this exact question, although in discussing this statute that court said:

"The object of the statute was to give notice of the approach of this heavy and dangerous machinery where it was required to pass through centers of population, a sufficient length of time to thoroughly advertise its going." See Railroad v. Davis, 104 Tenn., 442, citing approvingly Webb v. Railroad, 88 Tenn., 119.

In the latter case that court held that statute only applied to incorporated towns, as it was manifest that corporate limits meant the limits of an incorporated town.

Evidently the legislature, in passing these subsections had in mind two classes of travelers, those who cross the tracks on the outside of the corporate limits and those who cross the tracks inside the corporate limits of incorporated towns. Subsection 2 was for the protection of those crossing on the outside of the corporate limits, where the crossing had been marked with danger signals as provided in subsection 1; while subsection 3 was for the protection of persons in incorporated towns, where there were streets and highways crossing the railroad tracks, not under the control of the county authorities, and not thus marked.

These subsections 2 and 3 are not concurrent with, or declaratory of the common law, but the duties imposed are wholly statutory. If any part of the subsection was intended for the protection of persons traveling· in the suburbs of towns, outside the corporate limits, it would be· unreasonable to hold that the legislature meant to protect those from incoming trains and not to protect them from trains going out of towns on the same tracks.

Now if the section was not for the protection of persons at crossings outside the corporate limits, then such persons cannot invoke the statute, and there is no liability because of its nonobservance, as it is well settled that persons cannot avail themselves of the provisions of a statute that was not intended for their protection. See Chattanooga Railway & Light Co. v. Bettis, 139 Tenn., 332; Carter v. Redmond, 142 Tenn., 262.

It was said in the case of Ill. Central Railway Co. v. Adams, 2 Hig., 118, that if the accident happened on the outside of the corporate limits of an incorporated town, and between the one mile whistling post and said corporate limits, this subsection 3 applied, and that the railroad was liable for the nonobservance of the statute. But upon an examination of this case, it will be seen that this statement was dictum and we do not think that we are bound by it. As above stated, we think that the observance of the requirements set out in subsection 3 is for the protection of those within the corporate limits.

It results that this assignment of error must be overruled.

It is insisted by defendant in error that the plaintiff in error's right of action is barred, because he failed to bring his automobile to a full stop when within not less than ten feet nor more than fifty feet of the nearest rail, as required by chapter 36 of the Acts of 1917. We think this proposition should not be sustained. We have had this question up several times, and have held that where the plaintiff fails to stop, as required by said statute, that his failure is contributory negligence that should be taken into consideration by the jury in mitigation of damages on the statutory counts. See opinion of this court by Judge DeWitt, in the case of Southern Railway Co. v. Ed. Malone, Bradley County, May Term, 1925, Knoxville, and also, the opinion of this court by Presiding Judge Faw, in the case of Tennessee Central Railroad Co. v. Roy W. Zearing, Davidson County Law, September Term, 1925, Nashville, filed December 19, 1925, post p. 451.

However, in view of the conclusions already reached in this opinion, this question becomes immaterial.

It results that the assignments of error are overruled, and the judgment of the lower court is affirmed. The cost of the appeal is adjudged against plaintiff in error and the sureties on his appeal bond, for which let execution issue.

Faw, P. J., and DeWitt, J., concur.