### W. H. RYTHER v. CITY OF AUSTIN.

April 22, 1898.

Nos. 11,021—(87).

**Municipal Corporation—Negligence—Space Between Pole and Curb.**
One of the poles of an electric light company, erected in the streets of the defendant under a license from the city, stood in the gutter outside the curbstone (which was 18 inches high) so as to leave a space of between four and five inches between the pole and the curbstone. The pole being circular in form, this space on each side was V-shaped. A horse hitched to the pole could not get his foot fast in the space next to him between the pole and the curbstone, but could do so only by raising his foot over the curb, and putting it into the space on the opposite side of the pole. The plaintiff, who was entirely familiar with the situation, hitched his horses to the pole, and left them there. While he was absent, the horse next the curb, becoming restive, commenced pawing with his forefeet, and placing them up on the sidewalk, and in doing so got his foot fast between the curb and the pole on the opposite side, and in his efforts to extricate himself broke his leg. *Held*, that the city was not liable; that the foregoing facts did not tend to prove actionable negligence on its part.

Appeal by defendant from an order of the district court for Mower county, Whytock, J., denying its motion for a new trial after a verdict for $80 in favor of plaintiff. Reversed.

*Greenman & Dowdall*, for appellant.

*Kingsley & Shepherd*, for respondent.

MITCHELL, J.

The undisputed facts are as follows: About eight years ago certain parties, under a license from the defendant, erected electric light poles in the streets of the city, approximately on the line between the sidewalks and the part of the streets used by vehicles. When a cement sidewalk and curbstone were subsequently constructed on Main street, some of these poles stood outside the curb, and in the gutter. One of them stood so as to leave a space of from four to five inches between it and the curb. The pole being circular, this space on either side was V-shaped. The curbstone was about 18 inches high above the bottom of the gutter. While notices had been put on some of the poles forbidding the hitching of horses to them, yet the public had been accustomed to use the poles as hitching posts, without objection on part of either the electric company or the city.

The plaintiff, a farmer, who lived in the vicinity and was in the habit of driving into town almost every day, was entirely familiar with the situation. On the afternoon of the day in question he drove to town, hitched his horses to the pole already referred to, and went to another part of the city on business. There was a circus in town that day, and the crowds of vehicles and pedestrians on the streets would naturally make the horses somewhat restive. However that may be, the horse next the curb became rather restive, and began pawing with his forefeet, and putting them on the sidewalk, and while doing so got one of them fast in the space between the pole and the curb on the side farthest from where he was hitched. In his efforts to get loose, he fell and broke his leg, which rendered it necessary to kill him. A horse hitched to the pole could not have got his foot fast in the space on the side of the pole next to him. He could have got fast only by raising his foot clear over the curbstone and putting it into the space between the curb and the pole, on the opposite or further side. The negligence charged against the city is permitting the pole to be maintained in the gutter with such a space between the pole and the curbstone that a horse hitched to it was liable to get his foot fast in the way and manner above described.

We are of opinion that these facts do not tend to prove negli-

gence on the part of the city, and hence that the court erred in not directing a verdict for the defendant. The poles were not erected or designed for hitching posts, and the plaintiff was aware of that fact. He understood the situation, and all the risks, if any, of hitching horses to the poles, as fully as any of the city officials did. If he saw fit, for his own convenience, to use the pole as a hitching post, he took it as it was, and assumed all the risks. If he had been driving along the street at night, and collided with the pole in the dark, a very different case would have been presented.

It would be impossible to hold the city negligent without also holding the plaintiff equally or more so. As already suggested, he knew every fact which the city knew, and was certainly bound to exercise at least as great a degree of care for the safety of his horses as the city was bound to use for him. It is no answer to say that the questions of negligence and contributory negligence were for the jury. Within certain limits, this is true; but there is a point beyond which they become questions of law for the court. Moreover, the jury cannot, on such a state of facts, be permitted to contradict and stultify itself by finding that the city was negligent, but that the plaintiff was not.

But, independently of any question of contributory negligence, we are of opinion that no negligence on part of the city was proven. To hold a city liable on such a state of facts would be to establish a rule of duty for municipal corporations that would not be in accord with either justice or common sense.

Order reversed.