## City of Louisville v. Hayden.

(Decided June 4, 1913.)

### Appeal from Jefferson Circuit Court.

Damages—Personal Injuries Sustained in Falling Through Cellar Door—When City and Trustees of Church Not Liable.—A cellar door at the side of a building which extends out on the sidewalk and extends up to the building, being higher at the building than at the sidewalk, is not placed there for the purpose of persons standing on it and looking into the building. Neither the trustees of the church nor the city are liable to persons thus standing on the cellar door for the purpose of watching the proceedings in the church, and injured by the falling of the cellar door, from its giving away under the weight put upon it, although the cellar door was in a defective condition.

BENNETT H. YOUNG, HUSTON QUIN and MARION W. RIPY for appellant.

O'DOHERTY & YONTS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming in part and reversing in part.

The Calvary Baptist Church maintains a mission on the north side of Walnut street west of Twenty-eighth street in Louisville for colored people. The building sets back about three feet from the line of the street, and there is a cellar door extending from the building out upon the sidewalk, the cellar door being about five feet long and about twenty-five inches of the door being according to the weight of evidence, within the line of the

street. The cellar door is higher at the building than at the other end. There are no hinges upon it; the end next to the church rests upon timbers nailed to the side of the wall, and when the door is used it is simply lifted off. In June, 1909, they were holding a religious revival, and it was customary for people in the neighborhood, both white and colored, to gather around the church and look in at what was going on. In order to see better they frequently stood on the cellar door. On the night of June 24th, quite a crowd had gathered there for sometime, and about nine o'clock, among them was Loraine Hayden, a little girl about five or six years old. Loraine was standing on the cellar door near the building, and near her was Mrs. Minnie Bessels, who weighs something over two hundred pounds. There were two or three other persons standing on the door or standing on the frame on which it rested. The door gave way at the end next to the building and fell through into the cellar. The little girl and Mrs. Bessels fell into the hole. The child was seriously hurt and this suit was brought against the city of Louisville and the trustees of the church to recover damages for her injuries. At the conclusion of all the evidence the court instructed the jury peremptorily to find a verdict in favor of the trustees of the church, and submitted the case to the jury as to the city. The jury returned a verdict in favor of the child for $1,000. The court entered judgment on the verdict and overruled the city's motion for new trial; the city appeals.

According to the evidence for the plaintiff the cellar door was in a rotten decayed condition, and this by casual inspection a passerby could readily discover; and according to the plaintiff's evidence Mrs. Bessels and the child were the only two people on the door, but according to the evidence for the city, there were other people on the door so that the entire weight upon it was about 800 pounds, and this forced off the timber nailed to the wall upon which the door rested, and thus caused it to fall. There was sufficient evidence of the rotten condition of the door to take the case to the jury, if the accident had happened in the ordinary use of the street. The proof conduces strongly to show that the child was really standing beyond the line of the street, but as there is some confusion in the evidence on this subject, we will treat the case as though she was within the line of the street, but was using the cellar door to stand on for the purpose of looking into the windows of the church. The

question is was the city liable to a person who was injured by such a use of the cellar door? In Dillon on Municipal Corporations, Sec. 1711, 4th Edition, it is said:

"From what has already been said, that negligence is the ground of the liability; it follows that a municipal corporation is not an insurer against accidents upon the streets and sidewalks. Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient, we think, if the streets (which include sidewalks and bridges thereon) are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day; and whether they are so or not is a practical question to be determined in each case by its particular circumstances."

In Ryther v. City of Austin, 72 Minn., 24, an electric light pole had been put up in a cement sidewalk so as to leave a space of four or five inches between the pole and the curb. Ryther hitched his horse to the pole, the horse began pawing and finally got one of his feet fastened in the hole between the pole and the curb, and was so injured that he had to be killed. Holding the city not liable, the court said:

"We are of opinion that these facts do not tend to prove negligence on the part of the city, and hence that the court erred in not directing a verdict for the defendant. The poles were not erected or designed for hitching posts and the plaintiff was aware of that fact. He understood the situation, and all the risks, if any, of hitching horses to the poles, as fully as any of the city officials did. If he saw fit, for his own convenience to use the pole as a hitching post, he took it as it was, and assumed all the risks. If he had been driving along the street at night, and collided with the pole in the dark, a very different case would have been presented."

In Stickney v. City of Salem, 3 Allen, 374, the plaintiff stopped near a railling for ten or fifteen minutes, to talk to a friend and while standing there talking to his friend, leaned against the railing which gave way, and he was injured. The city was held not liable. The court said:

"The legal obligation of keeping a sufficient railing upon a highway is imposed only when it is necessary to mark the limits of that part of the road within which persons may safely travel, or to furnish a guard against dangerous places, so that proper protection may be afforded to those who in the exercise of due care as travel-

ers, while passing or standing on the way, might otherwise be exposed to accident or injury. If a person, without fault or negligence on his part, is forced against a railing, or takes hold of it to aid his passage, or falls against it by accident, or has occasion to use it in any way in furtherance of the lawful and reasonable exercise of his right as a traveler, and by reason of any defect or insufficiency it gives way and causes an injury, a town or city would be liable to make full compensation for the damages thereby occasioned. But this is the extent of the liability. A city or town is not bound by law to erect and maintain railings for persons to sit upon or lean against. They are not intended to be used for the convenience and accommodation of those who seek for a place of rest, while they stop in the highway to lounge, or to recover from fatigue, or to engage in conversation. If a person uses them for such purposes, he does it at his own risk. A town or city cannot be held liable for damages which are sustained by persons in consequence of improper or unauthorized uses of the highway, which occasion or contribute to accident.''

The same ruling was made in Blodgett v. City of Boston, 8 Allen, 207, when a boy who was playing ''old man on the castle'' on a plank sidewalk in starting away, got his foot caught between the planks. The court, after pointing out that the duty imposed on the city is to keep the highway safe and convenient for travelers, said:

''It has accordingly been held that towns and cities are not liable for damages occasioned by defects in highways to persons who were not travelers thereon at the time the injury to themselves or their property was suffered.''

A like ruling was made in Sykes v. Town of Pawlet, 43 Vt., 447, where the plaintiff had left the highway, and gone under a shed, and in attempting to get from out of the shed and back to the highway sustained an injury from a deep hole left by the side of the highway. The court said:

''Again, the duty of the town in reference to the margins of highways has never been extended beyond the requirement that they should be kept in a reasonably safe condition as against such accidents as are likely to, and actually do, occur in using the highway for the purpose of travel. In this case the backing into the gulf was not the result of an accident that occurred in using the highway for travel, but it resulted from using a shed by the

side of the highway, in an interval of cessation from travel, and attempting to get back into the road, after a voluntary departure from it.''

The same principle has often been applied in suits between master and servant where the servant used something not intended to bear the weight which he put upon it, thus in Sanders v. Eastern Hydraulic Co., 44 Atl., 630, the master was held not responsible to a servant who went upon a roof and put his foot upon a mullion of a window intended as a skylight, it being held that the mullion was intended to support the skylight and not for the purpose of a man standing upon it. In Creberry v. National Transit Co., 28 N. Y. Sup., 291, the plaintiff was injured while leaning against a stay lath of a scaffold, the lath being intended only to keep the post upright. In Schmidt v. Leistekow, 43 N. W., 821, a miller was injured by the giving away of a spout in the mill, used for passing mill stuff from one part of the mill to another, he having climbed upon it to reach a certain place; and in Kentucky Wagon Mfg. Co. v. Gossett, 142 Ky., 842, a recovery was denied where a painter trusted his weight to a small guy wire used to keep steady the post upon which the tank rested. We do not see how this case can be distinguished from those cited. While the city was under obligation to keep its streets reasonably safe for the ordinary purposes of travel, it was not required to see that a cellar door was safe for the purpose of persons standing upon it and watching the proceedings in the church. The cellar door was not intended for this purpose. It inclined from the ground up, and while it would give persons standing on it an advantage to see what was going on in the church, it was plainly not constructed for this purpose, and persons who use it for such purposes, and were injured while so using it, have no right of action against the city or the trustees of the church.

For the reasons indicated, the circuit court properly instructed the jury peremptorily to find for the church trustees; but he erred for the same reasons in refusing to instruct the jury peremptorily to find for the city.

The judgment as to the trustees of the church is affirmed; but the judgment as to the city is reversed and the cause remanded for further proceedings not inconsistent herewith.