CASE 94.—ACTION BY THOMAS BROWN BY NEXT FRIEND
        AGAINST THE CHESAPEAKE & OHIO RAILWAY
        COMPANY AND OTHERS.—December 7, 1909.

## Brown v. C. & O. Railway Co.

Appeal from Pike Circuit Court.

A. J. KIRK, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Reversed.

1. Negligence—Child Playing About Railroad Turntable—Petition in Action for Injury.—In an action for injury to a child playing about a railroad turntable the petition alleged: that it was very attractive to children as a merry-go-round; that they had been attracted to it and used is as such for a considerable time previous to the injury, with full knowledge of defendant's agents and servants in control thereof; and they often went on it with full knowledge of defendant; that it was not securely fastened, a minute description of the fastening being given; that children of seven or eight years old could easily remove the fastening, and had done so with full knowledge of defendant's servants in charge thereof; and that defendant negligently failed to provide a secure fastening, which could have been done with but little expense and trouble, though children were constantly using it as a plaything with full knowledge of defendant, who also knew that it was very dangerous for them to do so. Held not objectionable as not alleging that it was particularly and unusually attractive to children and was easily accessible and a source of danger to them.

2. Courts—Turntable Doctrine as Sound Law—Decisions of Courts of Other States.—The "turntable doctrine," by which railroad companies are held liable for injuries to children playing about turntables left unguarded or not securely fastened, will not be departed from by the Supreme Court of this state as unsound, though the courts of several states have seemingly repudiated it.

3. Negligence—Turntable Doctrine—Statement of Rule of Law.—
   If a railroad company can with slight expense and little incon-
   venience keep its turntables guarded or locked so as to pre-
   vent trespassing children from using them, they should be
   compelled to do so, and, if they fail to perform this duty, they
   should be made liable in damages for any injury occasioned
   to children of tender years in playing with them.

4. Negligence—Injury to Child Playing About Turntables—Prox-
   imate cause—Acts of Third Persons.—The acts of third persons
   in putting in motion an unlocked turntable, whereby a child
   was injured, is not the proximate cause of the injury, and
   does not relieve the railroad from liability for its negligence
   in failing to make it secure.

ROSCOE VANOVER and R. C. BURNS for appellant.

WORTHINGTON, COCHRAN & BROWNING and J. M. YORK
for appellee.

OPINION OF THE COURT BE CHIEF JUSTICE NUNN—
Reversing.

This appeal is from a judgment of the Pike circuit
court sustaining a general demurrer to and dismiss-
ing the petition and amended petition as to appellee
The action was instituted by appellant against appel-
lee and two persons by the name of Saad, to recover
damages occasioned by the loss of a foot by appel-
lant on appellee's turntable in the town of Pikeville,.
Ky. The action is undisposed of as to the Saads.
The only question to be determined upon this ap-
peal is whether or not the petition stated a cause
of action against appellee.

The injury occurred on the 11th 'day of 'April,
1909, on a turntable which was constructed by ap-
pellee in the town of Pikeville, about 65 feet from a
public highway. The Saads negligently removed
the fastening and set the turntable in motion, which
attracted appellant, a boy of 12 years of age, and
he entered upon, and while playing thereon one of

his feet was crushed to such an extent that it was rendered useless. The petition as amended, which relates to the negligence charged against appellee, is as follows :"The plaintiff, Thomas Brown,  *   * says: That at'the time of the injuries complained of plaintiff resided with his father, John Brown, a distance of about 300 yards from defendant company's turntable at which he was injured. That said turntable is, and was at the time of plaintiff's injury, complained of, situated a distance of 65 feet from the public highway or public road running through the lower end of the city of Pikeville, and running from Pikeville down Big Sandy river. That defendant company's main line of road and right of way intervene between the said public road and said turntable. That, immediately prior to the time plaintiff received the injury complained of, defendant company had said turntable fastened by a draw bolt placed between the rails on the switch line leading to said turntable, said draw bolt being placed where the said switch intersects with said turntable, said draw bolt being a bar of iron weighing 55 pounds, 4 feet 10 inches long, 3 inches broad, 1 inch thick, and with flanges at each end of said draw bolt, so that flange together with the width of the bar made it 10 inches wide at each end of said draw bolt, and same was placed at the point where the switch intersects with the turntable so that one side of the flange at each end of the draw bolt would be against the rails on the switch line and the other side of the flange at each end of said draw bolt would be against the rails on the said turntable, and in this way said turntable was held in its place and could not be removed or moved until said draw bolt was removed which was done by slipping said draw bolt either

way, so that the entire flange at each end of said draw bolt would be entirely on the rails of the switch line, or if slipped the other way so that the flange would be entirely on the rails of the turntable, and if said draw bolt was slided on the said rails either way so that the turntable would revolve without lifting the draw bolt from its place, and that it was necessary to only slide it until it passed the point of intersection as above set out. That at the time of the plaintiff's injury it was negligently removed by the defendant, Jasper Saad, and the defendants Jasper Saad and Sam Saad were negligently revolving said turntable and using it as a merry-go-round when plaintiff was attracted to it and by it, and was playing on same without any knowledge of the danger attending same at the time he received the injuries complained of. That said draw bolt was an insecure fastening, and said draw bolt could easily be removed and slipped to either side by a child seven or eight years old, so that said turntable would revolve, and small children had previous to the time of the injuries complained of been in the habit of removing said draw bolt and using said turntable as a merry-go-round, and said turntable was very attractive to children to use same as a merry-go-round, and was very dangerous to so use same. That the agents, servants, and employes of the defendant company in charge of said turntable knew that it could easily be unfastened and set in motion by children, and that it could easily be unfastened by small children, and knew that it was attended by great danger to do so, and knew that small children had been in the habit of unfastening and using same as a merry-go-round previous to the time of the injuries complained of.

vol. 135—51

That said turntable was situated in a part of the city of Pikeville that was much frequented by small children, as well as by other children, and this fact was also known to the agents, servants, and employes of defendant company in charge of said turntable at and previous to the time of the injuries complained of. That a lock and key could easily have been placed on said turntable, and the same kept locked when not in use by the defendant company, and no harm could have then come to any one. And that it was perfectly practicable to have done so without interfering with the reasonable use of said turntable by defendant company and with very slight trouble to defendant company."

Appellee's counsel present the following reasons in support of the judgment of the lower court: First, the "turntable doctrine" is not a sound principle of law and should not be adopted by this court. Second, the petition does not state a cause of action under that doctrine, even if it be sound. Third, whether sound or unsound, it has no application to the case at bar for the reason that appellee had securely fastened the turntable, and had, in any event, performed its lawful duty in this respect. Fourth, that the proximate cause of appellant's injury was the negligent conduct of appellee's co-defendants, Sam and Jasper Saad, and that there is no negligence shown upon the appellee's part, which can be said to have been the direct or proximate cause of the injury to appellant. The second and third propositions require but little notice.

Appellee claims that it is not alleged in the petition that the turntable was particularly and unusually attractive to children, and that it was easily accessible to children and a source of danger to them.

It is alleged that it was very attractive to children as a merry-go-round, and that they had been attracted to it and used it as such for a considerable time previous to the injury, and with the full knowledge of appellee's agents and servants in control thereof. It was not only alleged that it was accessible to children, but that they often went upon it with the full knowledge of appellee. It was alleged in the petition that the turntable was not securely fastened, and a minute description of the fastening is given, and it is alleged: That children seven or eight years old could easily remove the fastening, and had done so with the full knowledge of appellee's agents in charge of the turntable; that appellee had negligently failed to provide a secure fastening, which could have been done with but little expense and trouble, although children were constantly using it as a plaything with the full knowledge of appellee, who also knew that it was very dangerous for them to do so.

The first proposition of appellee's counsel is that the "turntable doctrine," which has been so often adhered to by this court, the courts of the majority of the states of the Union, and the Supreme Court of the United States, is unsound and should be departed from by this court. After a careful consideration of the question and authorities, we decline to depart from the doctrine, although the courts of several states have seemingly repudiated it. However, the opinions mostly are by divided courts and based on dicta. The first case referred to as repudiating the doctrine is the case of Frost v. Eastern Railroad, 64 N. H. 220, 9 Atl. 790, 10 Am. St. Rep. 396.

The turntable in that case "was fastened by a toggle, which prevented its being set in motion, unless the toggle was drawn by a lever, to which was at-

tached a switch padlock, which, being locked, prevented the lever from being used, unless the staple was drawn.

At the time of the accident, the turntable was fastened by the toggle; but it was a controverted point whether the padlock was then locked. When secured by the toggle, and not locked with the padlock, the turntable could not be set in motion by boys of the age and strength of the plaintiff." On this issue the court decided the case in favor of the railroad, and stepped aside to show its disapproval of the turntable doctrine as declared in the case of Sioux City R. R. Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745.

Another case which is relied on very strongly by appellee's counsel as showing the unsoundness of the doctrine is Walsh v. Fitchburg R. R. Co., 145 N. Y. 301, 39 N. E. 1068, 27 L. R. A. 724, 45 Am. St. Rep. 615. In that case the facts, as they appear in the opinion, show that the turntable was surrounded by an embankment from three to nine feet high, and was not easily accessible except by the company's track which led to it. The child injured, with two or three others, went to the turntable and was playing with it; but there is not a statement or intimation in the opinion that children had previously made use of this turntable as a plaything, or, if they had, there was no allegation that the company's agents in charge of it had any information of that fact. Therefore the facts of that case easily distinguish it from the one before us.

In commenting on the turntable doctrine and the decisions holding that a recovery cannot be had in "turntable" cases, Thompson, in his Commentaries on the Law of Negligence (volume 1, page 952) says:

"Some of the courts, chiefly in those portions of our country which are dominated by railroad and other corporate influences, have balanced the lives and limbs of children of tender years against the slight inconvenience on the part of the railway company of keeping its turntables locked, and have decided that such a company is not liable in damages for the death or injury of a child, received while playing with an unguarded and unfastened turntable, although situated in a populous district where children play in great numbers. Some of these cases put the doctrine on the cold and draconic ground that children, although of tender years, are responsible for the consequences of their trespasses the same as adults, and that the mere fact that one trespassing upon the grounds of a railroad company is such a child does not raise any duty on the part of the company towards the trespasser."

In the same work (volume 2, page 528) after commenting upon the great danger to children in allowing turntables to be left insecurely fastened, and stating that railroad companies should, when they can with slight expense and inconvenience, keep their turntables locked or guarded so that children could not use them, and that if they fail to do so they should be required to respond in damages, continues as follows:

"This, on the one hand, allows the railway company the reasonable use of its property, while at the same time it refuses to release it from these obligations of social duty which rest upon all men in a state of civilized society. Decisions of authoritative courts contravening this doctrine no doubt exist; but the author does not hesitate to characterize them, as he has always done whenever he has had occasion to

comment upon them, as being cruel, wicked, and blots upon the jurisprudence of civilized communities.''

Appellee's counsel and some of the authorities referred to as repudiating the turntable doctrine announce the correct general rule of law to be: The owner or occupier of real property is under no obligation to make it safe for the benefit of trespassers, intruders, mere volunteers, or bare licenses, and contend that the rule is applicable alike to adults and infants; that there cannot, in reason, be any distinction between them. The only exceptions they make to this general proposition are: First, when the owner of property expressly or impliedly invites persons upon his premises, he assumes the duty of exercising reasonable care to prevent their injury from dangerous obstructions thereon or defects therein; second, he cannot use his premises in such a way that the use so made of them inflicts injury upon the persons or property lawful in the use of or upon adjoining premises; third, the owner of ground abutting on a public highway cannot suffer pitfalls, or other nuisances dangerous to public travel, to remain so near the margin of such highway that persons in the lawful use of same are liable to receive injuries therefrom.

The fourth and only other exception, we quote: ''As an exception to the first rule, it may be stated that if the owner intentionally or wantonly places upon his premises a dangerous instrumentality or obstruction for the express purpose of inflicting injury, then he is liable if an injury results, for no one can lawfully use even his own property for the purpose of inflicting a wanton or intentional injury.'' If this is correct law, then the owner of property would have to commit a felony before he would be

liable in damages for injuries inflicted, for it would certainly be a crime for an owner of property to place upon it a dangerous instrumentality for the express purpose of inflicting injury or death upon another, if his attention was acomplished. This is not, and should not be, the law. If this principle were announced as the law in every state in this Union, in this age when there is such a clamor and frenzy to accumulate dollars, it would be destructive to humanity, and especially to infants and other unaccountable beings. The correct rule of law is, and should be, that if a railroad company can with slight expense and little inconvenience keep its turntables guarded or locked so as to prevent trespassing children from using them, they should be compelled to do so, and, if [they fail to perform this duty, they should be made liable in damages for any injury occasioned to children of tender years in playing with them. Suppose a farmer owned a pasture through which he knew children passed daily in going to and returning from school, and that he should turn a vicious animal into this field, and take no steps or precautionary measures to prevent it from injuring some one or more of the children, although he knew that it was likely to do so, under the rule contended for by counsel for appellee and the opinions referred to, the owner would not be responsible in damages, unless he intended to accomplish the result which followed. This is not the law of this state, and, in our opinion, should not be of any jurisdiction.

The turntable doctrine has been considered and approved by this court in several cases. The case of Branson's Adm'r v. Labrot, 81 Ky. 638, 50 Am. Rep. 193, was where Labrot and others owned or had control of an uninclosed lot of ground on which they

stacked some lumber. It was alleged in the peti-
tion in that case: That they stacked the lumber
in a negligent and unsafe manner; that the children
in the vicinity of the lot had frequented it for years
for the purpose of play, which fact was well known
to Labrot and others, when they piled their lumber
thereon; that the children continued to resort to
the lot for the same purpose after the lumber was
placed there with the knowledge of Labrot and others;
that the lumber, which was defectively stacked, fell
and crushed the life out of Bransom's infant son.
The lower court in that case, as did the court in the
case at bar, sustained a demurrer to the petition and
amended petition.

This court, however, reversed the action of the low-
er court, and said: "As a general rule, the owner of
land may retain to himself the sole and exclusive
use and occupation of it; but, as property in lands
depends upon municipal law for its recognition and
protection, the individual use and enjoyment of it
are subject to conditions and restraints imposed for
the public good, and from a reasonable and humane
regard for the welfare and rights of others. * * *
It is held that a party is guilty of negligence in
leaving anything in a place where he knows it to be
extremely probable that some other person will un-
justifiably set it in motion, to the injury of a third
person." Counsel in that case contended for the fol-
lowing rule, to wit: "The owner of private grounds
is under no obligation to keep them in a safe condi-
tion for the benefit of trespassers, idlers, bare licen-
sees, or others who may come upon them, not by
invitation, expressed or implied, but for pleasure or
to gratify their curiosity, however innocent or laud-
able their purpose may be." In commenting on this,

the court said: ''If this rule is to be interpreted so as to relieve the owner of private grounds from all, or even reasonable, care for the safety of those who without invitation, may come upon them, it is not a reasonable and humane rule, for the owner has no right to wantonly injure even an actual trespasser.''

The court also quoted with approval, in that case, from the case of Souix City Railroad Company v. Stout, 17 Wall. 657, 21 L. Ed. 745, the leading case establishing the turntable doctrine, as follows: ''In the case of Railroad Company v. Stout, 17 Wall. 657, 21 L. Ed. 745, it was held that the care and caution required of a child is, acording to its maturity and capacity, only to be determined in each case by the circumstances of that case, and that a railroad company might be held liable, on the ground of negligence for a personal injury to a child of tender years in a town or city, caused by a turntable, built by the company on its uninclosed land, left unguarded and unlocked, in a situation which rendered it likely to cause injury to children.'' To the same effect are the cases of Keffe v. Milwaukee R. R. Co., 21 Minn. 207, 18 Am. Rep. 393; Koons v. St. Louis R. R. Co., 65 Mo., 592, and Whirley v. Whitman, 1 Head (Tenn.) 610.

The case of Kentucky Central R. R. Co. v. Gastineau's Adm'r, 83 Ky. 119, approved the principle announced in the Stout and Labot Cases. In that case the boy was between 14 and 15 years, and the court said: ''We are aware that it has been held in some cases, as, for instance, in Flower v. Railroad Co. (69 Pa. 210, 8 Am. Rep. 251), supra, that, if the deceased is a trespasser, his being of tender years makes no difference, because the company is under no duty to him which requires his protection; but, in

our opinion, age should be considered upon a question of contributory neglect, and one should exercise reasonable care to anticipate and prevent an injury to a child of such tender years as to have little or no discretion, although he may be technically a trespasser. His condition excuses his concurrent negligence. Humane considerations require such a rule." See, also, the cases of L. N. R. R. Co. v. Popp, 96 Ky. 99, 27 S. W. 992, 16 Ky. Law Rep. 369; Swartwood v. L. & N. R. R. Co., 33 Ky. Law Rep., 785, 111 S. W. 305, 19 L. R. A. (N. S.) 1112; City of Owensboro v. York, 117 Ky. 294, 77 S. W., 1130, 25 Ky. Law Rep. 1397, 1439; Board of Councilmen v. Allen, 82 S. W., 292, 26 Ky. Law Rep., 581; Merschel v. L. & N. R. R. Co., 121 Ky., 620, 85 S. W. 710, 27 Ky. Law Rep., 465; I. C. R. R. Co. v. Wilson, 63 S. W., 608, 23 Ky. Law Rep., 684.

The remaining question necessary to be determined is whether appellee is relieved from liability, if negligent in failing to make secure its turntable, by the acts of its codefendants, Sam and Jasper Saad, who put the turntable in motion. The authorities seem to be one way on this question. In the case of Gulf Colorado & Santa Fe Railway Co. v. McWhirter, 77 Tex., 356, 14 S. W., 26, 19 Am. St. Rep., 755, this question was also involved, and the court said: "If it be conceded that the person who put the turntable in motion was sui juris, this would not relieve the appellant from liability, though another party might also be liable. If an accident occurs from two causes, both due to negligence of different persons, but together the efficient cause, then all the persons whose acts contribute to the accident are liable for an injury resulting, and the negligence of one furnishes no excuse for the negligence of the other." And after cit-

ing many cases from other jurisdictions, cites the following text-books to support the proposition, to wit: "Cooley on Torts, 823; Bishop on Noncontract Law, 518; Shearman & Redfield on Negligence, 35; Thompson on Negligence, 1088; Wharton on Negligence, 144."

The case of Snyder v. Arnold, 122 Ky. 557, 92 S. W., 289, 2|8 Ky. Law Rep., 1250, was where appellees negligently stacked a lot of lumber near to and partly on a sidewalk, and allowed it to remain there in its dangerous position for some time. Appellant, a boy of about nine years of age, was passing along on the walk and stopped by the side of the lumber, and at that moment a wagon loaded with rock was moved by, and the hub struck the lumber pile and caused it to fall upon the boy and injure him. Appellees in that case claimed that they were not responsible, even if they were negligent in letting the lumber remain at that place, for the reason that the driver of the wagon, a third person who was in no way connected with them, caused the lumber to fall which resulted in the boy's injury. In considering the question the court said: "It will thus be seen that the sole question in the case is: What was the proximate cause of the injury? And this is one of the most difficult and important questions presented in the trial of negligence cases; it being an established principle of law that there can be no recovery for an act of negligence unless it was the proximate cause of the injury complained of.

If the conduct of appellees in piling the lumber at the place, in the manner it was piled, and in permitting it to remain in that position, was not the proximate cause of the injury to appellant, he cannot recover. If the injury is traceable to the negligent

and careless manner in which the lumber was piled, although the immediate cause of the accident was running the wagon against the lumber, the appellant may recover. In our opinion the controlling and determining question in this case is : Were appellees guilty of negligence in piling the lumber and permitting it to remain in the position it was in when struck by the wagon? If there was no negligence on their part in this particular, then appellee cannot recover, because the injury to him was due to the driver of the wagon. On the other hand, if they were guilty of negligence in the respect mentioned, the negligence, or carelessness of the driver of the wagon will not excuse them, as the mere fact that another person concurs or co-operates in producing an injury, or contributes thereto in any degree, whether large or small, is of no importance.'' See, also, the cases of Bransom's Adm'r v. Labrot, supra, and Edington v. Railroad Co., 116 Iowa, 410, 90 N. W., 95, 57 L. R. A., 561.

For these reasons the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.