## Von Almen's Administrator v. City of Louisville, et al.

(Decided May 7, 1918.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Municipal Corporations—Exercise of Governmental Functions—Negligence—Liability.—A city is not liable for the death by drowning of a boy, who fell from the wall of a culvert, constructed upon private property near a street, into a temporary pool of water formed after a hard rain, and was drawn through the unguarded culvert into a sewer underneath the street, because the city in the construction and maintenance of the sewer exercised a governmental function only.

2. Negligence—Attractive Nuisance—Knowledge.—Owners of property upon which a city constructed and maintained a culvert, underneath which and beyond the property line was an open sewer into which drained the surface water, are not liable for the death from drowning of a boy who fell from the wall of the culvert into a pool of water formed after a hard rain and was drawn through the unguarded culvert into the sewer, where they had neither actual nor imputed knowledge of the sewer connection or the resultant danger thereof.

ELMER C. UNDERWOOD and BOYCE WATKINS for appellant.

J. W. S. CLEMENTS, PENDLETON BECKLEY and FRED FORCHT for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The city of Louisville, in December, 1915, connected an old culvert two feet in diameter, which, for many years, had carried the surface water from the west to the east side of Preston street between Brandeis and Lynn streets, with a thirty-inch city sewer leading to the river and located nine feet below the surface, by an eighteen inch pipe, at a point under the center of the street, and at the same time, constructed at the west end of the cul-

vert to protect its mouth a brick wall four feet high, five feet ten and one-half inches long, and about nine inches thick, with a concrete coping. This old culvert had existed at this point for many years before this territory was taken in to the city. Whenever there was a hard rain a pond was formed on the west side of the street, and it was to drain this pond more quickly after a rain as well as to prevent a discharge of the water upon the land east of the street that the sewer connection was made in the culvert. The mouth of the .culvert on the west side was just inside the property line of Ann E. Barrett, deceased, and the wall constructed by the city to the mouth of the culvert in June, 1915, is wholly upon her land.

Late in the afternoon of Sunday, June 18, 1916, a hard but not unusual rain fell forming a temporary pond on the west side of the street, which reached to within a few inches of the top of the wall at the mouth of the drain. Shortly thereafter, Sylvester Von Almen and his brother, William Von Almen, six and eight years of age respectively, were passing in the street on their way home when Irvin Age, a sixteen-year-old boy, called their attention to a snake in the pond approaching the culvert with some drift. As the snake, swimming with the current, came near the culvert, Age and Sylvester were standing side by side upon the wall, and as Age leaned forward in an effort to throw the snake out of the water, both he and Sylvester fell in. Age got out, but Sylvester was drawn into the culvert, thence into the sewer and was drowned, his body never having been recovered. His father, as administrator, instituted this action against the city, the executor, trustee, and devisees of Ann E. Barrett to recover damages for his death, alleging negligence upon the part of the city, in constructing and maintaining the street in an unsafe condition; and that the wall and pond formed an attractive nuisance, known to be accessible to and frequented by children and maintained by the city upon the Barrett property with the owner's knowledge and consent and for their benefit, without proper protection, for which the city and property owners were liable.

We do not think the facts justify a lengthy discussion of the alleged liability of the city for the accident upon the grounds of negligence in the maintenance of the street, since the accident did not happen upon, or result

from the use. of, the street, the boys having purposely left the street in obedience to their childish instincts for amusement; and, although the place of the accident was barely off the street right-of-way and within less than four feet of the sidewalk, the uncontradicted proof shows that the wall, the pond, and the culvert with its sewer connection, considered severally or together, were not constructed or maintained in such a manner as to render any reasonable use of the street, by children or adults, dangerous; hence, no danger could have been anticipated even to children playing in the street; and, as stated, this accident did not happen to decedent from any such use of the street, but from playing in the pond near the street where it was accessible from the street, just as it would have been at any other point within sight of the street, but no more so.  Clay City v. Abner, 26 Ky. L. R. 603; Carroll's Admr. v. City of Louisville, 117 Ky. 758; Dillon on Municipal Corporations, Sec. 1015; Zehe's Admr. v. City of Louisville, 29 Ky. L. R. 1107; City of Louisville v. Hayden, 154 Ky. 258; Spencer v. Mayfield, (Ind.), 85 N. E. 23; Dehanitz v. St. Paul (Minn.), 76 N. W. 48.

It, therefore, seems to us quite clear that liability, if any, must rest upon the theory that the structure as erected and maintained by the city upon the property of the Barretts was an attractive nuisance, and if such it was, the city is liable for its construction and maintenance unless it is an exercise of a governmental function, and the property owners are liable if they had actual or imputed knowledge of such use of their land, because it is admitted the place was easily accessible and unguarded.  Although we have reached the conclusion that none of the defendants is liable for this distressing and unfortunate accident, even if it be assumed that the place of the accident was an attractive nuisance, a statement of the reasons for this conclusion renders necessary a determination of the part or quality of the structure that is the basis for such assumption.

Certainly a wall only four feet high is not by itself an attractive nuisance any more than a stairway, a fence, a low building, a stile-block, or any other such immovable thing placed, stored, or suffered to remain upon private property, upon which children may and do climb and fall off to their hurt.  Neither is an ordinary artificial pond such a nuisance, although attractive to children and into

which they may be expected to wade or fall, just as they will into natural ponds, rivers and lakes in spite of admonitions and barriers. Coon v. Ky. & Ind. Terminal R. Co., 163 Ky. 223; Schauf's Admr. v. City of Paducah, 106 Ky. 228; Gillispie v. McGowan, 45 Am. Rep. 365; Hermes' Admr. v. Hatfield Coal Co., 134 Ky. 300; Stendel's Admr. v. Boyd, (Minn.), 42 L. R. A. 288; Arnold v. St. Louis (Mo.), 48 L. R. A. 291; Clark v. Manchester, 67 N. H. 577; Barnhard v. Chicago, Milwaukee & St. Paul R. Co., 1916-D L. R. A. 443; Sullivan v. Huidekoper, (D. C.), 5 L. R. A. (N. S.) 263; Peters v. Bowman, 115 Cal. 345; Klix v. Nieman (Wis.), 32 N. W. 223; Moran v. Pullman Palace Car Co. (Mo.), 33 L. R. A. 733.

It is also apparent from these authorities that a wall and the pond it surrounds, or as a dam it helps to form, when considered together, although attractive to children, can not be regarded as a nuisance when located upon private property to which children are not invited.

Nor, in our judgment, can the fact that there is an ordinary culvert in the wall to drain the pond, unless it produces some extraordinary and unnecessary danger, change the character of the structure so as to render it a nuisance, because the effect, as well as the purpose, of the drain is to prevent the formation of a pond, and thus prevent the place from becoming either attractive or dangerous to children, the only ground upon which it could be held to be a nuisance. So that we think we are safe in saying that the place was not an attractive nuisance prior to December, 1915, when the city, without the consent or knowledge, so far as the proof shows, of the owners of the property, accelerated the drainage of the waters that accumulated on the west side of Preston street after a hard rain, by connecting the culvert at a point under the street and not on the Barrett property with the city sewerage system; and, as we understand appellant's position, it is his contention that it was this sewer connection with the resultant unnatural current or suction at the mouth of the culvert that artificially made the place so dangerous when water had accumulated and was being rapidly drawn into the culvert, as to render it an attractive nuisance. Certainly, this is the only possible basis for such a contention, and manifestly the hidden sewer connection with the resultant unnatural current or suction into the unguarded culvert, artificially and materially increased the danger of death

to any child who might be attracted to the place and accidentally fall from the wall into the pond, during the necessarily brief and infrequent periods when the rainfall was sufficient to form a pond, because the culvert and sewer connection were large enough to admit a child's body and, if drawn into the culvert or sewer, drowning would inevitably result, whereas if there had been no sewer connection or if the mouth of the culvert had been protected by a screen of a few iron bars a child could not have been drawn into the culvert, and under either condition would have had a splendid chance of saving himself or being rescued.

It is impossible to reconcile the many cited cases that have been written upon somewhat analogous facts, making it a close question whether or not the place was an attractive nuisance, and it is quite difficult, if not impossible, to accurately define what is an attractive nuisance so as to make the owner responsible for youth's irresponsibility. As was said in Peters v. Bowman, 115 Cal. 345:

"The owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a child tempted by the attraction. His liability bears a relation to the character of the thing—whether natural and common or artificial and uncommon; to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing, and in short, to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions."

Therefore, as it is not necessary to the decision of this case, we shall not attempt to decide whether or not the place was an attractive nuisance, but shall assume the sewer connection made by the city in December, 1915, rendered it an attractive nuisance at such times as a pool of water, such as was formed at the time of this accident, was being rapidly drained into the sewer; but even upon this assumption, the city is clearly not liable because the only purpose in making the sewer connection was to drain off speedily the waters that otherwise accumulated in this section of the city, done in the performance of a public governmental duty imposed upon the city for public benefit, from which no pecuniary benefit was derived, and for which, under a rule long recognized and uniformly followed in this state, the city is not answer-

able in damages even though negligently done, except under certain conditions not present here, as where the negligence renders a public street not reasonably safe for such uses as should be anticipated or where the damage amounts to the taking of private property for public use. City of Louisville v. Frank's Admr., 154 Ky. 254; Smith's Admr. v. Commissioners of Sewerage, 146 Ky. 562; Jones & Co. v. Ferro Concrete Construction Co., 154 Ky. 47; Johnson's Admr. v. Commissioners of Sewerage, 160 Ky. 357; Schwalk's Admr. v. City of Louisville, 135 Ky. 670; City of Louisville v. Birdwell, 150 Ky. 589.

Nor can the owners of the property be held liable, because there is no proof that they were in any way responsible for the existence of the pond or the sewer connection which is assumed to have rendered the place occasionally an attractive nuisance, or that it was thus made or maintained for their benefit, except as they were a part of the general public, or that they had any knowledge of the fact that the sewer connection had been made and such knowledge can not be imputed to them under the proof, since the sewer connection, which only could have rendered the place attractive and dangerous occasionally, was not upon nor visible from their property, had been there only about six months, and it is not shown that during that time the owners had an opportunity even of discovering the added hazard resulting from the sewer connection.

Wherefore the judgment is affirmed.