## Louisville & N. R. Co. v. Vaughn.

Nov. 17, 1942.

122

H. T. Lively, C. S. Landrum and Milby & Henderson for appellant.

T. P. Noggle, C. H. Noggle and Vernon Shuffett for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The judgment is for $5,500 for personal injuries sustained by a nine year old boy, Jeff Henry Vaughn, while playing on a railroad turntable in Greensburg, on February 26, 1940.

The boy and five companions, from 10 to 13 years old, left off playing ''fox and hounds'' at a nearby lumber yard and went to the turntable, as they had done several times before. It was not locked. The boys easily removed an iron bar or draw bolt shaped like the letter ''I'' which was put between the ends of the fixed rails on the roadbed and the ends of the rails on the turntable to hold it in place when an engine was being run

on or off it. The boys testified that sometimes they would find the turntable locked and sometimes unlocked. One of an older group who resorted there testified the same. It is a fair interpretation of their testimony that this was perhaps one-half the time. The evidence of several adults was to the same effect, namely, that the turntable was not always kept locked. The plaintiff and his companions testified that they did not on this or any other occasion break any lock or other fastening but they did have to remove the bar between the rails. While the turntable was being revolved, Jeff jumped off, hit the wall, fell back and was struck by the machine.

The railroad employees testified that there was one mixed train running about noon every week day into Greensburg, which is the terminus of a branch line. The trainmen had found the turntable unlocked a number of times and the conditions indicated that on every occasion the lock had been broken or some part of the locking device forcibly pulled out or broken. The condition would be reported to the section foreman, who lived at Campbellsville, and it would be repaired two or three days later. Inspections were made of this portion of the track perhaps as often as once a week. But this evidence does not destroy that introduced in behalf of the plaintiff showing the turntable was found unlocked and practically unfastened upon a number of occasions. Nor does the railroad company show that the fastenings of the turntable were other than superficial, for it appears that in most instances merely a staple had been withdrawn from a tie or wood beam. Once a chain was used, but for how long or how it was attached was not developed.

There was no evidence tending to show knowledge of the railroad employees that the boys were in the habit of playing upon the turntable or that they knew of this group being there on the afternoon of the accident. Nor was there any evidence proving constructive or actual notice of the turntable being unfastened on this particular occasion.

We may say quickly that we find no merit in the contention that the turntable is located in an inaccessible place. It is between a side track and a street or road 105 feet away and there are several dwellings close by. It appears to be not far from livestock pens, tobacco warehouses, and a lumber yard.

The case obviously rests upon the doctrine of attractive nuisance, which is thus well defined in 38 Am. Jur., Negligence, Section 142, to be:

"That one who maintains upon his premises a condition, instrumentality, machine, or other agency which is dangerous to children of tender years by reason of their inability to appreciate the peril therein, and which may reasonably be expected to attract children of tender years to the premises, is under a duty to exercise reasonable care to protect them against the dangers of the attraction."

See Brown v. Chesapeake & O. Railway Co., 135 Ky. 798, 123 S. W. 298, 25 L. R. A., N. S., 717; Dominion Construction Co. v. Williamson, 217 Ky. 62, 288 S. W. 1018; Louisville & N. R. Co. v. Hutton, 220 Ky. 277, 295 S. W. 175, 53 A. L. R. 1328; Deaton's Adm'r v. Ky. & W. Va. Power Co., 291 Ky. 304, 164 S. W. (2d) 468. The doctrine is of quite recent development in the law of negligence, and like many other innovations, even though consistent with modern humanitarian concepts of social duty or consideration for those not able to protect themselves, as the weak against the strong, it has provoked diversity of opinion. In some jurisdictions the doctrine is not recognized because on such occasions the child is a trespasser. It has been said the rule tends to place responsibility for the safety of small children everywhere except where it belongs—with their parents. Sherman and Redfield on Negligence, Section 31. Those who advance that theory have little appreciation of the natural proclivities of boys to escape and run into mischief. Some reject the doctrine "on the cold and draconic ground that children, although of tender years, are responsible for the consequences of their trespasses the same as adults, and that the mere fact that one trespassing upon the grounds of a railroad company is such a child does not raise any duty on the part of the company towards the trespasser." Thompson on Negligence, as quoted in Brown v. Chesapeake & O. Railway Company, supra. There are limitations of various kinds and degrees upon its application in those jurisdictions which accept the doctrine. 38 Am. Jur., Negligence, Section 142. We early accepted the doctrine after its introduction into this country (Branson's Adm'r v. Labrot, 81 Ky. 638, 50 Am. Rep. 193) and have consistently adhered to it although, like other courts, we have followed something of a trend

towards strictness in its application, e. g., to cases where there is or may be a reasonable difference of opinion whether the instrumentality is alluring or dangerous or the liability will impose an unreasonable burden upon the one responsible for its existence.

The appellant attempts no vain effort to have this court depart from the doctrine. Its insistence is that it is not liable in this case because the plaintiff alleged the company knew that the turntable was dangerous and attractive; that it was unlocked and not secured; that children had played on it and used it as a merry-go-round for many years; and then the plaintiff had wholly failed to prove any knowledge on the part of the employees or agents of the railroad company of any of those conditions. As a subsidiary point, it is submitted that the instructions erroneously predicated the defendant's liability either upon such actual knowledge or upon constructive knowledge, imputed by the failure to exercise ordinary care to know. The appellant's factual premise is correct, that there was no evidence tending to establish actual knowledge. It is likewise correct in its statement of an absence of pleading of constructive knowledge and also of evidence that the company knew that boys occasionally played on the turntable unless it can be said that the breaking of the fastenings from time to time brought notice home to the company that the turntable was being used by miscreants. We cannot, however, agree with the conclusions of law.

Knowledge is indeed the foundation of liability for negligence in cases of this character. Knowledge of some factors is imputed, while in others it must be proved by evidence of facts of which the defendant knew, actually or presumably. Some instrumentalities easily accessible to children, are not only inherently dangerous but inherently attractive and alluring. Plato, the philosopher, in "The Republic," said something to the effect that of all the wild animals that roam the fields, the most untamable is a small boy. Duty may be measured by reasonable apprehension, and civil wrong is defined in terms of the natural and probable. It is not only a humane but a reasonable rule that regards the characteristics and habits, the unpredictable acts of daring, the reckless tendencies, and the lack of discretion, caution and judgment of a young boy. "Standards of prudent conduct are declared at times by courts, but they are

taken over from the facts of life." Pokora v. Wabash Railroad Company, 292 U. S. 98, 54 S. Ct. 580, 582, 78 L. Ed. 1149, 91 A. L. R. 1049. Childish impulses are one of the "facts of life," and no normal man can claim ignorance of these impulses and the probabilities resulting therefrom. The dangerous and alluring qualities of a railroad turntable gave the attractive nuisance rule the name of "Turntable Doctrine." It was a turntable involved in the initial and leading case of Sioux City & Pacific Railroad Company v. Stout, 17 Wall. 657, 21 L. Ed. 745. We have no reluctance, therefore, in holding that a railroad turntable is inherently an attractive nuisance. Nothing is scarcely as tempting. It stands as a constructive invitation. While we may or may not agree with the conclusions in respect to the nonliability of the owner of a poisoned swimming pool in which a boy was drowned, we do agree with Justice Holmes' statement in United Zinc & Chemical Co. v. Van Britt, 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28, 31, that:

> "While it is very plain that temptation is not invitation, it may be held that knowingly to establish and expose, unfenced, to children of an age when they follow a bait as mechanically as a fish, something that is certain to attract them, has the legal effect of an invitation to them although not to an adult."

In that opinion the court construed Sioux City & P. R. Company v. Stout, supra, to hold that maintaining a known temptation, i. e., a turntable, takes the place of an invitation. As epigrammatically said by Chief Justice Cardozo, in Palsgraf v. Long Island Railroad Company, 248 N. Y. 339, 162 N. E. 99, 59 A. L. R. 1253:

> "Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right." And further: "The risk reasonably to be perceived defines the duty to be obeyed."

The law throws about young children the legal right not to be tempted into doing a dangerous thing, and throws upon every one the duty to exercise reasonable diligence to protect them from their inquisitive and venturesome nature. There was, therefore, a duty resting upon the railroad company to keep its turntable securely fastened at all times that boys might not hurt themselves upon it.

The learned American Law Institute has accepted the attractive nuisance rule. The thought which we have been trying to express is thus concretely given in Chapter 13, Section 339, of the Restatement of Law of Torts, as follows:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

In its comment, the Institute has said:

"It is sufficient to satisfy the conditions stated in Clause (a) that the possessor knows or should know that children are likely to trespass upon a part of the land upon which he maintains a condition which is likely to be dangerous to them because of their childish propensities to intermeddle or otherwise. Therefore, the possessor is subject to liability to children who after entering the land are attracted into dangerous intermeddling by such a condition maintained by him although they were ignorant of its existence until after they had entered the land, if he knows or should know that the place is one upon which children are likely to trespass and that the condition is one with which they are likely to meddle."

The application of Clauses (b) and (d) is so clear that reference to the comment need not be here made. A part of the comment on Clause (c) is as follows:

"A turntable may be essential to the proper functioning of a railway. The mere fact that it is maintained at a point where children are notoriously prone to trespass, would not of itself be sufficient to make the railroad company liable under the rule stated in this Section. If, however, the turntable could be made safe even against meddling children by a simple locking device, it would be unreasonable to maintain a turntable at such a place without such a device."

We would not be understood as holding a railroad company is an insurer against injuries to children upon a turntable, or as applying the doctrine of res ipsa loquitur except to the extent of needing no proof of its dangerous quality when revolving and of knowledge that boys go to it for play. We only hold that a turntable is so imminently dangerous and inherently attractive to boys as to impose the duty of prevision or anticipation that boys will undertake to use it as a merry-go-round, and the duty of securing it against such use by reasonable and proper methods. This is not a novel declaration. Dominion Construction Company v. Williamson, supra; Jones Savage Lumber Co. v. Thompson, 233 Ky. 198, 25 S. W. (2d) 373; Annotations, 36 A. L. R. 53, 136, 269; 45 A. L. R. 983, 987; 53 A. L. R. 1350; 60 A. L. R. 1449; Deaton's Adm'r v. Kentucky & W. Va. Power Co., supra. It is only the elementary rule that one is charged with notice of things that are common knowledge and is bound to anticipate the reasonable and natural consequence of his wrongful act, whether of commission or omission.

A distinction is to be drawn between (1) cases involving permanent, obviously and inherently dangerous and naturally attractive or tempting agencies or instrumentalities, easily accessible or available for use or operation of children young enough to come within the protective arm of the law, and (2) cases where all of these factors are absent. In the former class, one who thus maintains the attractive, dangerous contrivance is charged with knowledge of the fact that children are likely to go there and with the duty of exercising ordinary care to prevent injury to them from the exposed danger. In the latter class of cases, where one or more of the stated factors are absent, it may be incumbent upon the plaintiff to prove the defendant's actual or

legally implied knowledge of the reasonably essential dangerous characteristic of the instrumentality or that children of the class are likely to or would resort there to play or use the device or did do so. See Smith v. Hines, Director General of Railroads, 212 Ky. 30, 278 S. W. 142, 45 A. L. R. 980; Dominion Construction Company v. Williamson, supra; Von Almen's Adm'r v. City of Louisville, 180 Ky. 441, 202 S. W. 880.

The case at bar is within the former class. The only element of negligence needed to be proved was that pertaining to reasonable precaution to prevent the use of the turntable. The plaintiff's evidence on that issue was that it had not been reasonably secured. The iron bar, loosely placed between the rails, was but a challenge to the ingenuity and strength of the boys. As to this we quote for convenient reference two of the more pertinent notes given in 36 A. L. R. 269 et seq.:

"The mere fact that the railroad company has used some fastening on its turntable will not, with regard to the character of the fastening, absolve the company from liability. The fastenings need not be such as to render it impossible for children to remove them, but should be such that an ordinarily prudent person would deem them sufficient to render it impossible that children would remove them. O'Malley v. St. Paul, M. & M. R. Co., 1890, 43 Minn. 289, 45 N. W. 440."

"In Gulf, C. & S. F. R. Co. v. Chappell, 1918, Tex. Civ. App., 202 S. W. 366, it was held that a railroad company was not exonerated from liability for injury to a child playing on its turntable, by the fact that before the accident a lock bar used for the purpose of holding the turntable in line was left in place, where it was easily removable by trespassing children."

Therefore, it was not incumbent upon the plaintiff to prove that the defendant knew or should have known he was playing upon the turntable when he suffered the accident. Accordingly, the inclusion of that duty in the instruction was not harmful to the defendant but imposed an unnecessary burden upon the plaintiff. The jury might justly have inferred "that the defendant, in the construction, location, management, or condition of its machine had omitted that care and attention to

prevent the occurrence of accidents which prudent and careful men ordinarily bestow.'' Sioux City & Pacific Railroad Company v. Stout, 17 Wall. 661, 21 L. Ed. 745.

The plaintiff suffered a severe fracture of his leg, a puncture to the bone at another place, and deep lacerations elsewhere. Complications arose in the treatment requiring at least two substantial operations. The bone became infected, and one Louisville surgeon testified that the boy has ''chronic osteomyelitis [inflammation of the bone] which he will probably have for all his life and which may flare up at any time.'' The boy's left leg is atrophied, with a bowing and fracture deformity, making it about one-half inch shorter than the other. This was the condition in June, 1941, 16 months after the accident. On the other side there is substantial testimony to the effect that except the shortening of the leg there had been or will be a complete recovery. Immediately after the accident, in February, 1940, the boy was taken to a hospital in Campbellsville. He remained under treatment there until the latter part of March when he was taken home with his leg in a cast. He was returned to Campbellsville in May and the cast removed. In June he was sent to Louisville and placed under the care of a bone specialist. With brief intervals, from November until February 24, 1941, the boy was attended by Doctor Bate, district surgeon of the railroad company. He wore a brace up to within a month of the trial in July, 1941. Thus for a year the boy was out of school and wholly incapacitated. He naturally suffered much pain. The court instructed the jury alternatively on finding of permanent or temporary injuries, with appropriate measures of damage. We are of opinion that the verdict of $5,500 is not excessive within the rule respecting a reversal of a judgment on that ground.

Judgment affirmed.