## Kentucky Utilities Co. v. Garland et al.

December 8, 1950.

R. L. Maddox, Judge.

Ogden, Galphin & Abell, Patterson & Wilson for appellant.

Astor Hogg for appellee.

STANLEY, COMMISSIONER—Affirming.

The judgment is for $2,000 for personal injuries sustained by an eleven year old boy, Floyd Garland, by electric shock and burns and a fall from a tree, through the branches of which ran uninsulated transmission wires carrying 4,000 volts. There is no substantial disagreement as to the facts. The appellant seeks a reversal of the judgment on the ground that it was entitled to a directed verdict.

The tree was located on a steep slope 35 feet from the shoulder of a state highway and 26 feet on a direct horizontal plane. Eight or ten feet beyond the tree was an abandoned county road which was still used occasionally as a public passway. A creek ran a few feet beyond it. On the other side of the creek, some 150 to 200 yards away, was the Glendon Mining Camp in which lived 25 families with many children, including this boy. This was near the settlement of Arjay. The tree was a sugar maple with low branches, and a small stump or fallen tree beneath it made it very enticing to small boys. The accident occurred in July, 1947, when the tree was, of course, in full leaf. A nearby pole to which two electric wires were strung leaned so that the lines were brought within five feet of the trunk of the tree. It was easy to see the wires entering and leaving the branches of the tree, but they could not be seen in the foliage.

The record is silent as to the ownership of this property, but it is shown that the Utilities Company had a right-of-way for the line of an undefined width. There were no fences between this place and the highway above it or the terrain below it through which the creek ran, or even beyond that to the houses. It is shown by several children and their parents that the children of the mining camp were in the habit of playing there catching crawfish, wading the creek, playing cowboy and hide and seek along the banks, in the bushes and up this particular tree, which was so easily climbed and afforded such a good hiding place.

We may dispose of the argument that has the least

basis, namely, that the boy could not have been injured by contact with the wire or by receiving an electric shock from it. He and other children had been playing around the tree, and he climbed it to cut a fork for his slingshot. He had seen other boys up the tree that day, and had climbed it himself two or three times before then. He remembers sitting on a limb on the lower side of the tree, holding to the trunk, getting ready and reaching out to cut the fork. He stated, ''The next thing I knew I was at the house.'' He had been picked up from the ground unconscious. An experienced mine motorman who saw the boy before his removal from the place of the accident, described his physical condition and stated his symptoms were the same as a number of people he had seen shocked or killed by electricity. He had a hole burned in his breeches and a burnt place on his leg where he had sat. His fingers and toes were slightly burned and his hair singed. It is shown that the boy was very nervous, slept restlessly, vomited freely and had aches and pains in his ears and head after this accident. The burnt place on his head became infected and a scar and bald spot have been left there. The injuries are not such as would have resulted from a mere fall from the tree. However, an engineer of the company, after examining several photographs of the tree and considering the location of the wires, expressed the opinion that a person sitting on a limb on the other side of the trunk and holding to it could not get an electric shock from the wires if they had been in contact with the end of another limb on the upper side of the tree. This opinion was predicated on the conclusion that any charge of electricity would have been carried down the trunk to the ground and not out on a limb protruding from the other side. Exactness in details of just where the boy sat ought not to be demanded or expected. Whatever may be the technical opinion, the facts themselves show that this boy did suffer shock and burns which could have come only from the charging of the tree with electricity. This is another situation like that suggested by the story that the technologist says a bumblebee's body is too heavy for its wingspread and it is impossible for the bee to fly; but the bee, not knowing anything about the law of aerodynamics, goes ahead and flies anyhow.

It can hardly be questioned that to maintain high voltage, uninsulated wires through thick foilage of a

tree creates a very dangerous condition. The defendant company's employees passing up and down the highway frequently must have, or, at least, should have seen this particular condition.

As we 'have indicated, it appears that this tree was on the public highway or public passway or in the space between. If it was on public property, then the injured boy was not a trespasser, and liability, could be based upon negligence in the maintenance of a dangerous condition, the law of attractive nuisance not being applicable, for as said in Reynolds v. Iowa Southern Utilities Co., 8. Cir., 21 F. 2d 958, 959, where an eleven year old boy was killed by electricity when he climbed a tree in a public street, in which tree the boys of the neighborhood played, "The boy had a right to be 'in the tree." Cf. City of Madisonville v. Nisbet's Administrator, 270 Ky. 248, 109 S. W. 2d 593. See Annotations 17 A. L. R. 837.

This case, however, was practiced under the doctrine of attractive nuisance. Of course, everyone will agree that the tree itself was harmless and by itself cannot be brought within that rule. But a tree of this character is alluring to a boy and is "attractive" for it may reasonably be expected to attract children to the premises. The "nuisance" element arises from having permitted the tree to be charged with electricity. The combination made the alluring tree an attractive, dangerous instrumentality on the defendant's premises, which is the basis of the doctrine of attractive nuisance. This distinguishes such cases as Jarvis v. Howard, 310 Ky. 38, 219 S. W. 2d 958, where the instrumentality was itself not dangerous. The question in the case is whether there was a duty to anticipate that a boy would climb the tree thus charged with electricity, or, extending the thought, that one exercising the highest degree of care should reasonably have known or have expected that children would congregate and play at the place.

Perhaps closer to the instant case are those cases where electric lines on public ways ran through branches of trees located on adjacent private grounds or playgrounds and children were hurt or killed when they climbed the trees. The cases are brought together in Annotations, "Duty to guard against danger to children by electric wires" under the captions, "Wires on

or near playgrounds." "Wires reached by climbing," and "Wires in trees." 17 A. L. R. 833, 41 A. L. R. 1337, 49 A. L. R. 1053, 100 A. L. R. 621. The courts, whose members were once boys (with the rare recent exceptions where the judges are women) have variously stated their recognition of the nature of the little animals, their love of adventure, innocence and heedlessness of danger, and of the obligations of electric companies and their managers to remember that nature and to conduct their operations accordingly. Thus, in Chickering v. Lincoln County Power Co., 1919, 118 Me. 414, 108 A. 460, 462, (note 17 A. L. R. 837) the judges wrote: "Human life is short enough, and its burdens and responsibilities come soon enough, at best. To take from boyhood the legitimate pleasures and adventures of tree climbing would unduly restrict the confines of that memory cherished domain, and lessen life's joys both there and thereafter." And in Temple v. McComb Electric Light & Power Co., 89 Miss. 1, 42 So. 874, 875, 11 L. R. A., N. S., 449, (note 17 A. L. R. 837) the court says: "It is perfectly idle for the appellee to insist that it was not bound to have reasonably expected the small boys of the neighborhood to climb that sort of tree. The fact that such boys would, in all probability, climb that particular tree, being the kind of tree it was, was a fact which, according to every sound principle of law and common sense, this corporation must have anticipated. The argument that it did not almost suggests the query whether the individuals composing this corporation, its employes and agents, had forgotten that they were once small boys themselves. The immemorial habit of small boys to climb little oak trees filled with abundant branches reaching almost to the ground is a habit which corporations stretching their wires over such trees must take notice of. This court, so far as the exertion of its power in a legitimate way is concerned, intends to exert that power so as to secure, at the hands of these public utility corporations, handling and controlling these extraordinarily dangerous agencies, the very highest degree of skill and care."

If the inherently dangerous condition was not in fact on the public way, as it appears to be, but on the defendant's exclusive property, the factor of the boy being a trespasser passes out of the case so far as the right to a directed verdict is concerned, for at least it

could be found that the situation came within the rule of attractive nuisance. Concerning the aspect of accessibility and anticipation, the law of attractive nuisance is thus stated in 38 Am. Jur., Negligence, Sec. 153: "The fact that a dangerous condition was open, exposed, and easily accessible to children, in a place frequented by children is a circumstance from which it may readily be found that an injury to a child of tender years reasonably should have been anticipated. The accessibility of the offending place or appliance tends directly to show constructive knowledge that a child might sustain an injury therefrom, and knowledge of the peril is the basis of liability. The fact that the instrumentality was in an unenclosed lot adjacent to the highway tends to show accessibility."

In appreciation of the legal responsibility to exercise the highest degree of care in distributing electricity we cannot say as a matter of law that the defendant was under no duty to anticipate that the many children living so close to the point, even though it had no actual knowledge of their habit to play around the tree, might not get hurt by this negligent condition and that it is not liable for the consequences. Maybe Little Lord Fauntleroy would not have played in this rough place, but it was a natural habitat for Huckleberry Finn and these vigorous, outdoor country boys, living a couple of hundred yards away. It is not so much a question of actual knowledge as it is of anticipation. 18 Am. Jur., Electricity, Secs. 72, 73. In principle, we have for application Union Light, Heat & Power Co. v. Lunsford, 189 Ky. 785, 225 S. W. 741; Louisville & N. v. Vaughn, 292 Ky. 120, 166 S. W. 2d 43; Deaton's Administrator v. Kentucky & W. Va. Power Co., 291 Ky. 304, 164 S. W. 2d 468. See also of special pertinence Stark v. Holtzclaw, 90 Fla. 207, 105 So. 330, 41 A. L. R. 1323; Cooper v. North C. Power Co., 117 Or. 384, 244 P. 671, rehearing, 117 Or. 652, 244 P. 665, 666, 245 P. 317, (note 45 A. L. R. 991).

The judgment is affirmed.